**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

WILLIAM A. NEEDLE     :
and             :
MICHAEL R. NEEDLE,     :
     Plaintiffs    :
              :
vs.           :  CIVIL ACTION NO.
              :
EDWARD DOSIK, Individually and as  :
Personal Representative of Susan Dosik :
ESTATE OF SUSAN DOSIK, Deceased :
T. ROWE PRICE GROUP, INC.,   :
and             :
T. ROWE PRICE ASSOCIATES, INC. :
     Defendants   :

## COMPLAINT

## JURISDICTION AND VENUE

1.  Plaintiffs seek damages sustained  from violations of the Securities Exchange Act of 1934, 15 U.S.C.  § 78a  et seq., and the Pennsylvania Consumer Protection Law and Unfair Trade Practices Act, 73 P.S. §201-1  *et seq*,   and other wrongdoing by the Defendants in connection with an  IRA held at T. Rowe Price from 2002 through 2018, entitled "IRA FBO Rhea S Needle Trp Trust co Custodian Rollover Account Edward Dosik Trp/Poa" ("the IRA").

2.  This Court has jurisdiction pursuant to 15 U.S.C Code § 78aa and 28 U.S.C. §§ 1331, 1337 and 1367.  The Court also has jurisdiction pursuant to 28 U.S.C. '"1332 in that both plaintiffs are Pennsylvania citizens, each defendant is a Maryland citizen, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.   Venue is proper in this district under 15 U.S.C. §78aa and 28 U.S.C. § 1391. Defendants transact business in this district and a substantial part of the events or omissions giving rise to the claims made herein occurred in this district.

## PARTIES

4.      Plaintiff, William A. Needle, is an individual domiciled in Pennsylvania and a citizen of Pennsylvania.  At all times relevant hereto, he was a beneficiary and "successor in interest" to the IRA under Pennsylvania law, 20 PA.C.S. §5601.3(d).

5.      Plaintiff, Michael R. Needle, is an individual domiciled in Pennsylvania and a citizen of Pennsylvania.  At all times relevant hereto, he was a beneficiary and "successor in interest" to the IRA under Pennsylvania law, 20 PA.C.S. §5601.3(d).

6.      Defendant, Edward Dosik, is an individual domiciled in Maryland and a citizen of Maryland.  Dosik is a certified public accountant who also purports to be a professional investor.

7.      Prior to her death on August 24, 2021, Susan Dosik (*nee* Needle) was an individual domiciled in Maryland and a citizen of Maryland.  Upon information and believe, she died with a Will; this Will named Edward Dosik as her Executor; and Edward Dosik has opened or will open an Estate of Susan Dosik in Montgomery County, Maryland.

8.      Defendant T. Rowe Price Group, Inc. ("TRP") is a corporation organized and existing under the laws of Maryland, has its main place of business at 100 East Pratt Street Baltimore, MD 21202, and is a citizen of Maryland.  TRP is a mutual fund and financial services organization that provides a broad range of services to consumers. It is one of the most profitable business in the world, with annual profit margins as high as 30.9% during the relevant time period.   It has an office in this district at 1735 Market Street, Philadelphia, PA 19103.

9.      Defendant T. Rowe Price Associates, Inc. ("TRP Associates") is a wholly-owned subsidiary of T. Rowe Price, that provides investment advisory services to TRP mutual funds.

**OPERATIVE FACTS**

10.   Plaintiffs and Susan Dosik are the children of Lawrence I. Needle (5/22/25-12/8/01) and Rhea S. Needle (10/17/28-9/18/18).  Prior to 12/8/01, Lawrence and Rhea Needle managed and invested their savings with advice and assistance from investment professionals at Citizens Bank (Jenkintown branch). On October 23, 1998, Rhea Needle appointed Michael R. Needle as her Agent under a general and durable power of attorney.[1]

11.   Following Lawrence Needle's death, Rhea Needle's owned a residence at 1173 Dixon Lane, Rydal PA, a vacation condominium at 5200 Boardwalk, Unit 11E, Ventnor NJ, and had approximately $200,000 in savings, including three IRAs; was entitled to her husband's social security benefits (the maximum); and was the heir to Unit 16A7, 2401 Pennsylvania Avenue, Philadelphia, PA, a condominium belonging to Bertha F. Needle, Lawrence Needle's maternal aunt.  Rhea Needle's estate plan was to use her savings and the proceeds of any sale of real estate to generate supplemental income (in addition to SSI and IRA income), to support her modest life style in retirement and leave the principal to her children.

Rhea Needle's TRP Accounts

12.   Around Christmas 2002, less than three weeks after the death of Lawrence Needle, Dosik and Susan Dosik visited Rhea Needle in Rydal PA and pressured her to put her savings under Dosik's management.  They represented to her (and William Needle, who was living with her) that Dosik was qualified and competent to manage her savings and preserve her Estate Plan by virtue of his experience in such matters and could be trusted to do so as a licensed CPA.

13.   On or about December 26, 2001, Rhea S. Needle executed a limited power of attorney on a TRP form supplied by Dosik, appointing Dosik as agent over an account or accounts to be established for Rhea Needle at TRP.

--------

[1] Re-executed on October 10, 2017; Doc Id. 53304032 (Philadelphia Recorder of Deeds)

14.     On January 16, 2002, Dosik executed the written agreements and other TRP documents needed to establish two TRP accounts for Rhea Needle (aka Investor 994804080):

- the aforementioned IRA, into which an existing IRA with $61,154.81 was rolled over,

- an account entitled "Edward B Dosik, Agent TRP/POA Dtd12/26/2001 Rhea S Needle," ("the Taxable Account"), into which Dosik deposited $2,500.

15.     Thereafter, TRP never furnished Rhea Needle withany agreement made regarding these accounts[2] and never sent Rhea Needle a statement for these accounts.[3] Rather TRP sent two statements to Dosik, to him at his residence and to him at Rhea Needle's residence. Upon information and belief, this was at Dosik's request and by agreement with him. [4]

16.     On January 25, 2002, $100,000 of Rhea Needle's savings was transferred to the Taxable Account. This was substantially all of her savings other than two IRA's.

17.     On February 21, 2002, Dosik executed a TRP Form IRA Distribution Request that was used to send all IRA distributions to the Taxable Account controlled by him rather than to Rhea Needle for use in paying her living expenses.  Rhea Needle was not informed of this by Dosik or TRP.  Plaintiffs learned of it 2019 from a court-ordered Accounting by Dosik

18.     On May 15, 2002, Rhea Needle sold her vacation condominium.  At her request, net proceeds of $137,696.35 were paid to her for investment through Citizens Bank.

---

[2] 17 C.F.R. § 240.17(a)-3(17(iii) required that, "for each account with a natural person as a customer or owner," TRP have a record  "indicating that each customer or owner was furnished with a copy of each written agreement * * * pertaining to that account * * *"

[3] FINRA Rule 2231 required that TRP "with a frequency of not less than once every calendar quarter, send a statement of account* * * * containing a description of any securities positions, money balances, or account activity to each customer whose account had a security position, money balance, or account activity during the period since the last such statement was sent"

[4] All figures are from a court-filed Account by Dosik on 10/30/19 ("the Accounting"), sought by Plaintiffs on 3/14/19 and ordered by the Orphans Court of Philadelphia County on 6/27/19.

19.     Thereafter, Dosik and Susan Dosik pressured Rhea Needle to transfer these

proceeds and her two non-TRP IRA, as follows:

| Date | Description | Amount | To: |
|------|-------------|--------|-----|
| 20020518 | Ventnor Condo proceeds | $550.00 | Taxable |
| 20020701 | Ventnor Condo proceeds | $75,000.00 | Taxable |
| 20020819 | IRA rollover | $2,544.88 | IRA |
| 20030912 | IRA rollover Transamerica | $27,283.78 | IRA |
| 20030919 | Federated Equity Income Fund, Class B* | $2,822.65 | Taxable |
| 20030919 | Federated Strategic Income Fund, Class B* | $33,026.83 | Taxable |
| 20030919 | Federated Bond Fund, Class B* | $9,382.94 | Taxable |
| 20030919 | Checking, Citizens Investment Services Corp.* | $210.24 | Taxable |

*Purchased through Citizens Bank with net proceeds of Ventnor condominium sale

20.     Plaintiffs did not learn of these transfers until the Accounting in 2019.

21.     On November 23, 2005, Bertha F. Needle died.  Her Will left 16A7 2401

Pennsylvania Avenue and other assets to Rhea Needle and appointed Michael Needle as

Executor.  Her other assets had dwindled to an amount insufficient to fund needed renovations to

Unit 16A7, in which she had lived for decades without renovation.

22.     To preserve her estate plan, Rhea Needle asked Michael Needle to renovate Unit

16A7 as a retirement residence in order to maximize the sale proceeds of 1173 Dixon Lane left

after the expense of renovating Unit 16A7 to save and generate supplemental retirement income.

23.     From February through August 2006, Michael Needle renovated Unit 16A7 at a

cost which would leave all but $55,947.40[5] of the 1173 sale proceeds to generate supplemental

income for Rhea Needle's retirement.  He also negotiated and handled a sale of 1173. Rhea

Needle resigned her part time position as a social worker.

---

[5] Due to disputes with a creditor and regarding taxes, the precise amount would not be known
until an Accounting and Adjudication in the Estate of Bertha F. Needle in 2008.

24.     On August 22, 2006, the sale of 1173 closed. Net proceeds were $355,235.92, leaving $299,288.52 to invest and generate supplemental retirement income.

25.    That same day, and for days before, Dosik and Susan Dosik urged Michael Needle, as Rhea Needle's Agent, to send the $355,235.92 to the Taxable Account. They assured him that prior contributions had been conservatively invested and preserved and that Dosik would do likewise with the nearly $300,000 left to invest and generate supplemental income.

26.    In reliance on these representations, Michael Needle as Agent under General Power of Attorney, instructed the settlement clerk to wire $355,235.92 the Taxable Account.

27.    On September 7, 2008, Michael Needle requested Dosik to pay $55,947.40 due from Rhea Needle to the Estate of Bertha F. Needle per an Adjudication of Michael Needle's Accounting as Executor.  Dosik assured Michael Needle that the principal invested at TRP ($655,653.65, exclusive of $90,983.47 in IRA rollovers) had been conserved; that $25,947.50 would be repaid immediately, $15,000 on 10/15/08; and $15,000 on 11/15/08.

28.    In 2010 or 2011, Dosik became Rhea Needle's CPA after informing her and Michael Needle that her accountant at 2401 Pennsylvania Avenue was not doing a good job in preparing Rhea Needle's returns. Upon information and belief, he feared that the accountant would detect or warn Rhea Needle about possible mismanagement of her investments by Dosik.

29.    By August 2014, Rhea Needle, 85, was having difficulty in paying her expenses. Dosik became a co-signer on her Wells Fargo checking account for the purpose of paying them (e.g. condominium fee, real estate taxes, insurance premiums and credit card bills).

30.    Upon information and belief, Dosik instructed TRP, without authority from Rhea Needle or Michael Needle, to address both statements to him at his residences to prevent Michael Needle from looking at TRP statements sent to Dosik at Rhea Needle's address while caring for Rhea Needle at Unit 16A7.

31.    In December 2014, Rhea Needle was diagnosed with vascular dementia, from which she had probably suffered since 2012. Michael Needle had sole authority to make or authorize investment decisions and expenditures for her as her Agent under a General and Durable Power of Attorney.

32.    On or about December 12 and December 30 2014, Dosik and Susan Dosik represented to Plaintiffs that Rhea Needle had been "living on her dividends" and the principal invested at TRP had been conserved.

33.    On July 13, 2015, Dosik and Susan Dosik visited Unit 16A7 and removed Rhea Needle's financial records (old bank statements and cancelled checks).  Dosik claimed that he needed them to prepare tax returns. Upon information and belief, he removed them to prevent Michael Needle from discovering large distributions from the Taxable Account to him or Susan Dosik while caring for Rhea Needle at Unit 16A7.

34.    At that time, Dosik and Susan Dosik represented to Michael Needle that Rhea Needle had been "living on her dividends" and principal had been conserved.  They repeated this to Michael Needle and Mary Redmond on 10/19/15 in Philadelphia and in an email sent on 2/10/16. In March 2016, Rhea Needle, no longer able to live at Unit 16A7, moved into the memory care unit at Watermark at Logan Square. Dosik and Susan Dosik represented to Michael Needle and Mary Redmond (Michael Needle's fiance) that Rhea Needle had been "living on her dividends" and principal had been conserved in an email sent on 3/16/16 and in person in Philadelphia on 3/26/16.

35.    In June 2016, Michael Needle put Unit16A7 up for sale.  Thereafter, Dosik and Susan Dosik repeatedly represented to Michael Needle and Mary Redmond (Michael Needle's fiance) that she had been "living on her dividends" and principal had been conserved in phone calls in February 2017, May 2017, July 2017, August 2017, September 2017 and October 2017;

36.  On December 8, 2017, Michael Needle, as Rhea Needle's Agent under a General and Durable Power of Attorney., sold Unit 16A7, 2401 Pennsylvania Avenue and received $481,415.87 in net proceeds.  Dosik again represented that Rhea Needle had been "living on dividends" and enjoying large gains in 2016-17 bull market.  In reliance on these representations, Michael Needle agreed to invest the $481,415.87 in the Taxable Account.

37. On September 18, 2017, Rhea Needle died. Plaintiffs requested that Dosik tell them how much was in the TRP accounts and supply statements. [6]  Dosik ignored them for over two months.

38. On December 6, 2018, Plaintiffs sent Dosik a letter demanding an accounting of the money in his possession at TRP.[7]

40.     On December 14, 2018, Respondent promised to supply TRP statements for the accounts.  He represented (falsely) that he needed to get them from TRP in order to supply them to Plaintiffs.  He insisted on meeting to divide up Rhea Needle's Estate prior to getting and supplying the statements. Plaintiffs declined to do so.

41.     On or about December 24, 2018, Plaintiffs received digital copies of 17 T. Rowe Price statements.  These were year end summary statements for 2002 through 2017 and October 2018 statement with virtually no information about trading activity and distributions -- not the 201 monthly statements sent by TRP to Dosik from January 2002 through September 2018. They were addressed to Dosik at Rhea Needle's address from 2002 through 2013 and to Dosik at his home address from 2014 through 2018.

---

[6] 20 Pa.C.S. §5601.3(d) required Dosik to "disclose receipts, disbursements or transactions conducted on behalf of the principal" to a "successor in interest of the principal's estate," such as Plaintiffs.

[7] On October 9, 2018, Dosik probated a Will dated November 20. 1998.  Plaintiffs believe that this Will was revoked by a subsequent Will kept by Rhea S Needle in her safe deposit box

42.     On December 26, 2018, Dosik, in retaliation for Plaintiffs' demand that he fully account for the $1,228,052.99 invested in the IRA and Taxable Account, filed a baseless foreclosure action against Michael Needle for $216,563 (No. 181203205, C.P.Phila)  He entered an improper default judgment.  This was vacated and the case dismissed with prejudice.

43.     On March 14, 2019, Plaintiffs petitioned the Orphans Court of Philadelphia County to compel Dosik to file an Accounting as Agent and produce records pursuant to 20 Pa.C.S. §5601.3(d)(of "receipts, disbursements or transactions * * *on behalf of the principal").

44.     On June 27, 2019, this Petition was granted and Dosik ordered to "file an Account of his administration of Principal's estate from 12/26/2001 to 09/18/2018 * * * or before October 30, 2019."

45.     Immediately after the hearing, Dosik produced 201 monthly TRP statements addressed to him at his residence – all of which could and should have been produced when initially requested by Plaintiffs.  He withheld records of "transactions conducted on behalf of the principal"(e.g. account opening documents, communications with TRP) and is still doing so.

46.     On October 30, 2029, Dosik filed the Accounting.  This reflected that:

- $90,983.47 in IRA rollovers had generated a mere $24,132.34 in net income over 18 years (a 1.55% annual yield)

- $70,838.97 in distributions went to the Taxable Account rather than Rhea Needle.  I

- 1,137,069.52 contributed to the Taxable Account (including the $70,838.97) generated a mere 143,475.85 in net income over 18 years (a 0.7% annual yield)

- $35,595.81 in losses in the stock market  (as it doubled or tripled)

- $436,085.13 in distributions which Dosik refuses to identify, far in excess of supplemental income needed by Rhea Needle in addition to her Social Security Income and $148,239.28 in identified distributions for living expenses.

## The Swindle

47.     The Accounting revealed that IRA and Taxable Account, as established and managed by Dosik, was a swindle by him and Susan Dosik of Rhea Needle, Michael Needle and William Needle.

48.     Given Rhea Needle's age and estate plan, a professional investor would have invested 2/3's of the principal in a professional managed income fund able to yield 4-5% while conserving principal and one third in an equity fund, most of which increased by 250% to 300% during the relevant time period (02-18).

49.     Dosik invested most of the $90,983.47 in IRA rollovers in (A) odd lots of low-rated, high interest bonds purchased from TRP or TRP Associates at large, undisclosed markups which resulted in losses on disposition and (B) financial and real estate stocks, with  most purchases during the midst of a real estate bubble.  See Table One compiled from the Accounting, appended hereto..

50.     This "strategy" created the false impression that $69,755.87 in profit was generated from $90,983.47 in principal (4.48% annual yield) while conserving virtually all of the principal given $70,254.82 in distributions.  See Table Two compiled from the Accounting, appended hereto. Dosik magnified this false impression by keeping inordinate amounts of principal (10-50%) in cash.

51.     In reality, losses incurred by this "strategy" resulted in an actual profit of $24,132.33 (1.55%  annual yield), considerably worse than the professionally managed income funds in which Rhea Needle had invested through Citizens Bank or offered by TRP. Table Two. This profit was not even received by Rhea Needle but wasted or looted as set forth below.  All this was concealed from Rhea Needle and her Agent, Michael Needle, by TRP's conduct in not sending statements to either at the behest of Dosik.

52.   The purpose and effect of the foregoing was to induce Rhea Needle and her Agent, Michael Needle, to invest $1,137,069.52 in the Taxable Account.

53.   Most of this was used to purchase (A) odd lots of low-rated, high interest bonds from TRP or TRP Associated at large at a substantial, undisclosed markups which resulted in losses on disposition and (B) financial and real estate stocks, many purchased during the midst of a real estate bubble.

.    54.   This created the false impression that $223,409.60 in profit was generated from $1,137,069.52 in principal, again magnified by keeping inordinate amounts of principal (10-50%) in cash.   In reality, losses incurred by this "strategy" resulted in an actual profit of $143,475.85,  a performance considerably worse than the professionally managed income funds in which Rhea Needle had invested through Citizens Bank or offered by TRP.

55.  The Accounting shows $148,239.28 in distributions from the Taxable Account for living expenses.

56.  The Accounting reflects an additional $436,085.13 in distributions from the Taxable Account.  This far exceeds supplemental income needed by Rhea Needle in addition to her Social Security income and $148,239.28 in distributions for living expenses.

57.   Unexplained distributions are especially large in 2004 and 2005, after receipt of the Ventnor Condominium sale proceeds, in 2006, 2007, and 2008, after receipt of the 1173 Dixon Lane sale proceeds, and in 2014, 2015, 2016, 2017 and 2018, after Dosik became a signatory on Rhea Needle's checking account to pay her expenses.  See Table Three appended hereto.

.    58.  Dosik refuses to explain what this $436,085.13 was for, despite having taken bank records from Rhea Needle's residence that enable him to do so.

59.   Plaintiffs are accordingly informed and believe that much of this $436,085.13 was misappropriated and/or looted by Dosik and/or Susan Dosik.

Orphans Court Proceedings

60.    The June 27, 2019  order for Dosik to file an Accounting also ordered Plaintiffs to file any objections within thirty days. They filed six, the first three of which sought to surcharge Dosik for his malfeasance and misfeasance as Agent.

61.    Dosik moved to dismiss this surcharge action with prejudice on the grounds that all of his transactions in the IRA and Taxable Account as Agent under TRP's Power of Attorney were disclosed to and ratified by Rhea Needle.

62.    Plaintiffs answered that, inter alia, none of the transactions were disclosed, much less ratified, due to TRP's failure ever to send account statements to Rhea Needle (or her Agent, Michael Needle).

63.    On February 12, 2019, the Orphans Court dismissed Plaintiffs' surcharge action without prejudice, apparently on the grounds that Pennsylvania law does not permit a surcharge action in the context of an Accounting by an Agent under a Power of Attorney.

64.    The IRA passed directly to Plaintiffs and Susan Dosik on the death of Rhea Needle and is not an asset or property of the Estate of Rhea Needle.  Under Pennsylvania law, Plaintiffs are the owners and successors in interest of two-thirds of the IRA.

65.    Plaintiffs do not seek damages in connection with the Taxable Account, which is property of the Estate.  They petitioned for authority to bring a survival action against Defendants for damages sustained by the Estate in connection with the Taxable Account.

66.    That Petition is still pending before the Orphans' Court.

**COUNT I**
**PURSUANT TO 15 U.S.C. § 78j & 17 C.F.R. § 240.10b-5**
**AGAINST DOSIK AND THE ESTATE OF SUSAN DOSIK**

67.   Paragraphs 1 through 66 above are restated as if set forth in full herein.

68.   Dosik's management of the IRA as set forth above used instrumentalities of interstate commerce to perpetrate an "artifice or scheme to defraud in connection with the purchase and sale of the securities listed in Table One, in violation of Section 10 of the Securities Exchange Act, 15 U.S.C. §78j, and Rule 10b-5(a) thereunder.

69.   Dosik and Susan Dosik used instrumentalities of interstate commerce to make knowingly false or materially misleading statements, namely that Rhea Needle was "living on her dividends" and the $90,983.47 invested in the IRA had been conserved, in connection with the purchase and sale of the securities listed in Table One, in violation of Section 10 of the Securities Exchange Act, 15 U.S.C. §78j, and Rule 10b-5(b) thereunder.

70.   Dosik and Susan Dosik used instrumentalities of interstate commerce to engage in acts, practices and a course of business which operated as a fraud or deceit in in connection with the purchase and sale of the securities listed in Table One, in violation of Section 10 of the Securities Exchange Act, 15 U.S.C. §78j, and Rule 10b-5(c) thereunder.

71.   Solely and proximately as a result of this conduct, the IRA was worth far less ($44,276.84) as of Rhea Needle's death than it should have been, damaging Plaintiffs, as her beneficiaries and successors in interest, in an amount to be determined by the trier of fact. Plaintiffs estimate this damage at $35,000 each.

**COUNT II**
**PURSUANT TO 15 U.S.C.  § 78j & 17 C.F.R.  §240.10b-5**
**AGAINST TRP and TRP ASSOCIATES**

72.    Paragraphs 1 through 71 above are restated as if set forth in full herein.

73.    TRP and TRP Associates used the facilities of national securities exchanges to perpetrate an "artifice or scheme to defraud in connection with the purchase and sale of the securities listed in Table One, in violation of Section 10 of the Securities Exchange Act, 15 U.S.C. §78j and Rule 10b-5(a) thereunder.

74.    TRP and TRP Associates used the facilities of national securities exchanges to engage in practices and a course of business which operated as a fraud or deceit in in connection with the purchase and sale of the securities listed in Table One, in violation of Section 10 of the Securities Exchange Act, 15 U.S.C. §78j, and Rule 10b-5(c) thereunder.

75.    Solely and proximately as a result of this conduct, the IRA was worth far less ($44,276.84) as of Rhea Needle's death than it should have been, damaging Plaintiffs, as her beneficiaries and successors in interest, in an amount to be determined by the trier of fact. Plaintiffs estimate this damage at $35,000 each.

**COUNT III**
**PURSUANT TO 73 P.S. §201-9.2**
**AGAINST DOSIK**

76.     Paragraphs 1 through 75 above are restated as if set forth in full herein.

77.     Dosik's activities as set forth above constitute "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" within the meaning of Section 2(4)(xx) of the Pennsylvania Unfair Trade Practices Act. 73 P.S. §201-2(4)(xx) and violated Section 3 of that Act, 73 P.S. §201-3.

78.    Solely and proximately as a result of this conduct, Rhea Needle and Plaintiffs, as her beneficiaries and successors in interest, suffered an ascertainable loss of money or property in an amount to be determined by the trier of fact.  Plaintiffs estimate this loss at $35,000 each.

79.    Plaintiffs are entitled to recover their actual damages and request three times their actual damages, costs and a reasonable attorney fee pursuant to Section 9.2 of the Act. 73 P.S. §201-9.2.

**COUNT IV**
**PURSUANT TO 73 P.S. §201-9.2**
**AGAINST TRP and TRP ASSOCIATES**

80.   Paragraphs 1 through 79 above are restated as if set forth in full herein.

81.   The activities of TRP and TRP Associates as set forth above constitute "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" within the meaning of Section 2(4)(xx) of the Pennsylvania Unfair Trade Practices Act. 73 P.S. §201-2(4)(xx) and violated Section 3 of that Act, 73 P.S. §201-3.

82.   Solely and proximately as a result of this conduct, Rhea Needle and Plaintiffs, as her beneficiaries and successors in interest, suffered an ascertainable loss of money or property in an amount to be determined by the trier of fact.  Plaintiffs estimate this loss at $35,000 each.

83.   Plaintiffs are entitled to recover their actual damages and request three times their actual damages, costs and a reasonable attorney fee pursuant to Section 9.2 of the Act. 73 P.S. §201-9.2.

**COUNT V**
**FRAUD AND DECEIT**
**AGAINST DOSIK AND THE ESTATE OF SUSAN DOSIK**

84.   Paragraphs 1 through 83 above are restated as if set forth in full herein.

85.   Dosik and Susan Dosik statements and representations, as set forth in paragraphs 12, 25, 28, 32, 33, 34, 35, 36, 40, 50, 54, and 61 were knowingly false and made with the intent, purpose and effect of inducing Rhea Needle and her Agent Michael Needle into placing money in the IRA and Taxable Account and leaving it there.

86.   Solely and proximately as a result of this conduct, the IRA was worth far less ($44,276.84) as of Rhea Needle's death than it should have been, damaging Plaintiffs, as her beneficiaries and successors in interest, in an amount to be determined by the trier of fact. Plaintiffs estimate this damage at $35,000 each.

87.   Said conduct was malicious and warrants the imposition of punitive damages.

## COUNT VI
## BREACH OF FIDUCIARY DUTY
## AGAINST DOSIK

88.    Paragraphs 1 through 87 above are restated as if set forth in full herein.

89.    Dosik's conduct as set forth above breached his fiduciary duties to Rhea Needle

under 20 Pa.C.S. §5601.3, including:

- to "Act in accordance with the principal's reasonable expectations" [and] "in the principal's best interest,"

- to "act in good faith,"

- to "act loyally for the principal's benefit,"

- to "act so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest,"

- to use "care, competence and diligence," commensurate with the "special skills or expertise" which Dosik represented he had,

- to "keep a record of all receipts, disbursements and transactions made on behalf of the principal," "to disclose receipts, disbursements or transactions conducted on behalf of the principal" AND

- to "preserve the principal's estate plan."

90.    Solely and proximately as a result of this conduct, the IRA was worth far less

($44,276.84) as of Rhea Needle's death than it should have been, damaging Plaintiffs, as her

beneficiaries and successors in interest, in an amount to be determined by the trier of fact.

Plaintiffs estimate this damage at $35,000 each.

91.    Said conduct was malicious and warrants the imposition of punitive damages.

**COUNT VII**
**NEGLIGENCE**
**AGAINST DOSIK**

92.    Paragraphs 1 through 91 above are restated as if set forth in full herein.

93.    Dosik's conduct as set forth above breached his duty of cares to Rhea Needle under

under 20 Pa.C.S. §5601.3 and common law by:

- failing to have or employ the "special skills or expertise" in money management and investment he represented himself to have to "act in good faith,"

- Failing to "keep a record of all receipts, disbursements and transactions made on behalf of the principal," "to disclose receipts, disbursements or transactions conducted on behalf of the principal" AND

- failing to "preserve the principal's estate plan."

- Failing to disclose his actual performance and its adverse financial impact.

94.    Solely and proximately as a result of this conduct, the IRA was worth far less

($44,276.84) as of Rhea Needle's death than it should have been, damaging Plaintiffs, as her

beneficiaries and successors in interest, in an amount to be determined by the trier of fact.

Plaintiffs estimate this damage at $35,000 each.

WHEREFORE, plaintiffs request

A.  Trial by jury on all counts triable to a jury

B.  Judgment in their favor and against defendants for all damages found to have been

sustained by them.

C.  Treble damages

D.  Costs and a reasonable attorney's fees

E.  Punitive Damages

F.  Such other relief as may be necessary and proper

Respectfully submitted,

**Rothberg Federman & Hollister, P.C.**

By:*/s/ Michael T. Hollister*
       Michael T. Hollister
       Pa Attorney ID 87083
       3103 Hulmeville Road
       Suite 200
       Bensalem, PA 19020
       215-244-4224
       Mhollister@rothbergfederman.com
       Attorney for Plaintiffs.

## TABLE ONE
## INVESTMENTS, RHEA NEEDLE T. ROWE PRICE IRA

| Acquired | Security | Value | Sector | | | Rating (Debt) | | Disposed | Gain / Loss |
|---|---|---|---|---|---|---|---|---|---|
| | | | Financial | R/E | Other | Moody's | S&P | | |
| 20020207 | Maytag Corp. 7.85% Notes | $10,272.54 | | | $10,272.54 | Ba2 | BB+ | 20060808 | ($272.54) |
| 20020208 | Weingarten Realty Inc. Shares | $2,542.11 | | $2,542.11 | | N/A | N/A | 20081010 | $180.02 |
| 20020208 | Weingarten Realty Inc. Shares | $13,974.05 | | $13,974.05 | | N/A | N/A | 20090306 | ($8,214.14) |
| 20020423 | Allied Capital Com. Stock (Ares) | $8,632.57 | $8,632.57 | | | N/A | N/A | 20150620 | ($5,437.13) |
| 20020423 | Allied Capital Com. Stock (Ares) | $8,857.45 | $8,857.45 | | | N/A | N/A | 20160526 | ($5,698.94) |
| 20020815 | Maytag Corp. 7.85% Notes | $5,055.00 | | | $5,055.00 | Ba2 | BB+ | 20060808 | ($55.00) |
| 20020815 | Citigroup Com. Stock | $7,104.07 | $7,104.07 | | | N/A | N/A | 20080718 | ($3,904.00) |
| 20020826 | Travelers Prop.&Cas. Cl. A(Citi spin off) | $0.00 | $0.00 | | | N/A | N/A | 20020826 | $9.67 |
| 20020826 | Travelers Prop.&Cas. Cl. B(Citi spin off) | $0.00 | $0.00 | | | N/A | N/A | 20020826 | $12.05 |
| 20020826 | Travelers Prop. & Cas. Cl. A | $0.00 | $0.00 | | | N/A | N/A | 20021202 | $103.52 |
| 20020826 | Travelers Prop. & Cas. Cl. B | $0.00 | $0.00 | | | N/A | N/A | 20021202 | $228.71 |
| 20020826 | Travelers Prop. & Cas. Cl. A | $0.65 | | | | N/A | N/A | 20100405 | $0.65 |
| 20020905 | Merrill Lynch 7.75% Prf. Stock Ser. B | $13,105.00 | $13,105.00 | | | A1 | N/A | 20061229 | ($605.00) |
| 20020906 | Citigroup Com. Stock | $4,625.60 | $4,625.60 | | | N/A | N/A | 20080718 | ($2,541.98) |
| 20021121 | Allied Capital Com. Stock (Ares) | $314.85 | $314.85 | | | N/A | N/A | 20150620 | ($198.31) |
| 20021121 | Allied Capital Com. Stock (Ares) | $323.05 | $323.05 | | | N/A | N/A | 20160526 | ($207.85) |
| 20031202 | St. Paul Cap. 7.60% Pref. Stock Ser. A | $13,409.95 | $13,409.95 | | | Baa1 | BBB- | 20061117 | ($909.95) |
| 20031202 | Fleet Cap. 7.20% Pref. Stock Ser. M | $10,679.23 | $10,679.23 | | | Ba1 | BB | 20111220 | ($2,081.35) |
| 20031202 | Fleet Cap. 7.20% Pref. Stock Ser. M | $4,243.92 | $4,243.92 | | | Ba1 | BB | 20111230 | ($923.66) |
| 20061124 | Equity Res. 6.48% Pref. Stock Ser. N | $6,308.98 | $6,308.98 | | | Baa1 | BBB- | 20081010 | ($1,971.96) |
| 20061124 | Lincoln Nat.Cap.6.75% Pref.Stock Ser. F | $7,728.48 | $7,728.48 | | | Baa3 | BBB- | 20081010 | ($3,803.46) |
| 20061124 | Equity Res. 6.48% Pref. Stock Ser. N | $6,308.97 | $6,308.97 | | | Baa1 | BBB- | 20090306 | ($2,321.95) |
| 20061124 | Lincoln Nat.Cap. 6.75% Prf.Stock Ser. F | $7,728.47 | $7,728.47 | | | Baa3 | BBB- | 20090306 | ($5,161.44) |
| 20070215 | Wells Fargo Cap. 6.95% Prf Stock Ser O | $11,330.45 | $11,330.45 | | | Aa2 | | 20070419 | ($80.45) |
| 20070516 | Wells Fargo Cap. 7.00% Prf Stock Ser F | $11,456.45 | $11,456.45 | | | Baa1 | A- | 20110424 | ($210.84) |
| 20081105 | Coca Cola 7.375% Note | $10,242.90 | | | $10,242.90 | A3 | | 20100526 | $1,529.30 |
| 20090812 | Wells Fargo Sub. Note 4.95% | $15,409.35 | $15,409.35 | | | ??? | | 20131016 | ($409.35) |
| 20100604 | Weingarten Realty Inc. Shares | $10,357.95 | | $10,357.95 | | N/A | N/A | | |
| 20110517 | Ford Motor Co. 7.50% Note | $5,893.70 | | | $5,893.70 | Baa3 | BB+ | 20130204 | ($268.70) |
| 20110517 | Constellation En.Sub Deb.8.625% Ser A | $6,734.95 | | | $6,734.95 | Ba3 | BB+ | 20130617 | ($484.95) |
| 20120217 | BB&T Cap. .960% Prf. Stock Ser. B. | $5,199.95 | $5,199.95 | | | Baa1 | BBB | 20120718 | ($199.95) |
| 20130328 | Dow Chemical Co. 1.80% Senior Notes | $10,000.00 | | | $10,000.00 | Baa2 | BBB | 20180315 | $0.00 |
| 20130710 | Goldman Sachs 6.125% Notes | $8,571.39 | $8,571.39 | | | ??? | ??? | 20151112 | ($117.10) |
| 20131114 | Wells Fargo Cap. 8.00% Prf Stock Ser J | $12,857.45 | $12,857.45 | | | Baa2 | BBB | 20180917 | ($1,607.45) |
| | **TOTAL:** | **$239,268.83** | $164,195.63 | $26,874.11 | $48,199.09 | | | | **($45,623.53)** |
| | **PERCENTAGE:** | | 68.62% | 11.23% | 20.14% | | | | |

**TABLE TWO**
**CONTRIBUTIONS, INCOME, LOSSES, DISTRIBUTIONS**
**RHEA NEEDLE T. ROWE PRICE IRA**

| Year | Contribution | Interest/ Dividend | Gain/ Loss | Net | Distributions |
|------|-------------|--------------------|-----------|-----|--------------|
| 2002 | $63,709.69 | $2,817.70 | $353.95 | $3,171.65 | $2,700.00 |
| 2003 | $27,283.78 | $4,410.29 | $0.00 | $4,410.29 | $3,172.90 |
| 2004 | | $6,327.50 | $0.00 | $6,327.50 | $4,710.86 |
| 2005 | $290.29* | $6,645.60 | $0.00 | $6,645.60 | $5,146.79 |
| 2006 | | $7,291.07 | ($1,842.49) | $5,448.58 | $5,344.35 |
| 2007 | | $7,012.65 | ($80.45) | $6,932.20 | $6,065.76 |
| 2008 | | $6,411.11 | ($12,041.39) | ($5,630.28) | $4,907.52 |
| 2009 | $293.86* | $2,847.23 | ($15,697.53) | ($12,850.30) | $0.00 |
| 2010 | | $3,791.57 | $1,529.95 | $5,321.52 | $3,469.32 |
| 2011 | | $3,715.99 | ($3,215.85) | $500.14 | $3,955.20 |
| 2012 | | $3,055.46 | ($199.95) | $2,855.51 | $3,917.52 |
| 2013 | | $2,842.14 | ($1,163.00) | $1,679.14 | $4,204.68 |
| 2014 | | $3,065.33 | $0.00 | $3,065.33 | $4,221.24 |
| 2015 | | $2,930.76 | ($5,752.54) | ($2,821.78) | $5,022.72 |
| 2016 | | $2,121.20 | ($5,906.79) | ($3,785.59) | $5,163.72 |
| 2017 | | $2,707.13 | $0.00 | $2,707.13 | $4,768.80 |
| 2018 | | $1,763.14 | ($1,607.45) | $155.69 | $3,483.44 |
| **TOTAL** | **$91,577.62** | **$69,755.87** | **($45,623.54)** | **$24,132.33** | **$70,254.82** |

*Treated as Distributions by the Accounting

Apparent Annual Yield  Income/(Contributions X 17)          4.48%

True Annual Yield  Net Income/(Contributions X 17)          1.55%

**TABLE THREE**
**INCOME, EXPENSES, UNEXPLAINED DISTRIBUTIONS**

| Year | Salary | Social Security | Living Expense Distributions | Total | Unexplained Distributions |
|---|---|---|---|---|---|
| 2002 | $8,400 | $22,259 | | $30,659 | $9,550.00 |
| 2003 | $8,400 | $22,615 | | $31,015 | $5,000.00 |
| 2004 | $8,400 | $22,977 | | $31,377 | **$19,727.66** |
| 2005 | $8,400 | $23,344 | $7,461.00 | $39,205 | **$13,117.66** |
| 2006 | $4,200 | $23,718 | $6,893.00 | $34,811 | **$40,058.83** |
| 2007 | $0 | $24,097 | $230.00 | $24,327 | **$56,000.00** |
| 2008 | $0 | $24,483 | $40,929.66 | $65,413 | **$46,000.00** |
| 2009 | $0 | $24,874 | $18,943.00 | $43,817 | **$22,000.00** |
| 2010 | $0 | $25,272 | | $25,272 | $18,500.00 |
| 2011 | $0 | $25,677 | | $25,677 | $26,000.00 |
| 2012 | $0 | $26,088 | $4,306.27 | $30,394 | $24,000.00 |
| 2013 | $0 | $26,505 | $4,773.82 | $31,279 | $16,000.00 |
| 2014 | $0 | $26,929 | $4,506.80 | $31,436 | **$18,400.00** |
| 2015 | $0 | $27,360 | $21,207.45 | $48,567 | **$10,141.98** |
| 2016 | $0 | $27,852 | $17,131.65 | $44,984 | **$46,214.00** |
| 2017 | $0 | $27,852 | $21,857.13 | $49,709 | **$55,375.00** |
| 2018 | $0 | $27,852 | | $27,852 | **$10,000.00** |
| **TOTALS** | $37,800.00 | $429,754.00 | $148,239.78 | $615,793.78 | $436,085.13 |