# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM A. NEEDLE,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 21-4786** |
| **v.** | : | |
| | : | |
| **T ROWE PRICE GROUP INC.,** | : | |
| *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    MARCH 28, 2022

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiffs William A. and Michael R. Needle (collectively, "Plaintiffs") are the sons of Rhea Needle, deceased.  Defendants T. Rowe Price Group, Inc., T. Rowe Price Associates, Inc., and T. Rowe Price Investment Services, Inc., (collectively, "T. Rowe Price") together run a brokerage firm that provides investment management and retirement services.  Defendant Edward Dosik ("Dosik") is Rhea Needle's son-in-law and was married to her daughter Susan, sister of Plaintiffs.  Susan is now deceased, and Dosik serves as the personal representative of her estate.

In 2001, Rhea Needle executed a power of attorney authorizing Dosik to open, on her behalf, an individual retirement account (the "IRA") with T. Rowe Price; said account was opened in 2002.  Plaintiff Michael R. Needle, Plaintiff William A. Needle, and Susan Needle Dosik were named beneficiaries of the IRA in the event of Rhea Needle's death.  Among the documents signed to open the IRA was a Brokerage IRA New Account Form (the "New Account Form"), which contained, *inter alia*, an arbitration clause (the "Arbitration Clause").  The Arbitration Clause provides, in relevant part:

> Predispute Arbitration Clause.  I agree to settle by arbitration any controversy between myself and Price [T. Rowe Price Investment Services, Inc.], its parent, or affiliates, and/or any such officers, directors, employees, agents or Price's clearing broker, relating to the Account Agreements, my account, or account transactions, or in any way arising from my brokerage relationship with Price . . . .

(New Account Form, Defs.' Mot. for Prelim. Inj. Ex. B-1, ECF 31, at p. 64).

Dosik managed Rhea Needle's IRA until Rhea Needle's death on September 18, 2018.  As a result of her death, the ownership of a proportional share of the securities held in the IRA transferred to each of the three named beneficiates pursuant to the Uniform Transfer on Death Security Registration Act.  To effectuate said transfer, Plaintiffs completed IRA Distribution Forms, requesting that T. Rowe Price distribute all of the securities in the IRA equally to the three named beneficiaries.  Consistent with the IRA Distribution Forms, T. Rowe Price created separate beneficiary accounts and transferred to Plaintiffs their respective shares of the securities held in the IRA to the beneficiary accounts.  Thereafter, in March 2019, the shares were sold for cash, and T. Rowe Price issued checks to the named beneficiaries as the payout of the proceeds and closed the beneficiary accounts.

Believing that the IRA proceeds should have been more than what was distributed, Plaintiffs filed this action against T. Rowe Price alleging securities fraud under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, and Rule 10b-5, 17 C.F.R. § 240.10b-5, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-1 *et seq.*  Plaintiffs also assert claims against Dosik for his alleged mismanagement of the IRA.  In their amended complaint, Plaintiffs also seek an order to stay this matter and compel T. Rowe Price to arbitrate their claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4.  [ECF 23].

Before this Court is T. Rowe Price's *motion for a preliminary injunction enjoining arbitration*, [ECF 31], filed pursuant to Federal Rule of Civil Procedure ("Rule") 65, Plaintiffs'

response in opposition thereto, [ECF 45], and T. Rowe Price's reply, [ECF 53]. The issues raised in the motion are fully briefed and are ripe for disposition. For the reasons set forth herein, T. Rowe Price's motion for a preliminary injunction is granted, and Plaintiffs are enjoined from proceeding with the arbitration proceeding pending against T. Rowe Price.[1]

## LEGAL STANDARD

In the underlying motion for a preliminary injunction, T. Rowe Price seeks an order to enjoin Plaintiffs from proceeding with an arbitration before the Financial Industry Regulatory Authority ("FINRA").[2,3] Plaintiffs oppose the motion.

Rule 65 governs the issuance of a preliminary injunction. The United States Court of Appeals for the Third Circuit has interpreted this Rule to require, in order for a court to grant an injunction, the movant to show that "(1) it has a likelihood of success on the merits, (2) it will suffer irreparable harm if the injunction is denied, (3) granting preliminary relief will not result in even greater harm to the nonmoving party, and (4) the public interest favors such relief." *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006). The movant carries the burden to establish each element in its favor. *P.C. Yonkers, Inc. v. Celebrations the Party Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). The first two factors are the "most critical": "If these gateway

---

[1]     This Court also considered Plaintiffs' brief in support of their motion for stay, [ECF 33], and T. Rowe Price's response in opposition, [ECF 46].

[2]     The Financial Industry Regulatory Authority ("FINRA") is a self-regulatory organization that exercises oversight over securities firms. *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 90 (3d Cir. 2018) (citing *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 737 (9th Cir. 2014)). FINRA is statutorily authorized by Congress and works under the supervision of the Securities and Exchange Commission.

[3]     T. Rowe Price initially sought to enjoin Plaintiffs from initiating FINRA arbitration. However, one week after the motion was filed, Plaintiffs filed to arbitrate this matter before the FINRA. [*See* ECF 33-11]. Considering these events, this Court will evaluate T. Rowe Price's motion as requesting an order to enjoin Plaintiffs from proceeding with their pending FINRA arbitration until this Court has definitively ruled on the arbitrability of the dispute.

factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

A court may rule on a motion for a preliminary injunction without holding an evidentiary hearing where there are no relevant facts in dispute. *See Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 719 n.16 (3d Cir. 2004) ("[W]here the motion turns on a disputed factual issue, an evidentiary hearing is ordinarily required."). Here, the facts relevant to the instant motion are not in dispute and, therefore, a hearing is not necessary to address the motion

## DISCUSSION

T. Rowe Price argues that it has met each of the four factors for a preliminary injunction under Rule 65 enjoining Plaintiffs from proceeding with their FINRA arbitration. This Court agrees.

### *Likelihood of Success on the Merits*

In its motion, T. Rowe Price argues, *inter alia*, that it is likely to succeed on the merits of its defense to Plaintiffs' claim to compel arbitration because there is no arbitration agreement between them or a statute that requires T. Rowe Price to arbitrate Plaintiffs' claims. Specifically, T. Rowe Price argues (1) that Plaintiffs were not and are not T. Rowe Price's "customers" with respect to Rhea Needle's IRA under FINRA Rule 12200, and (2) that no written arbitration agreement exists between Plaintiffs and T. Rowe Price that would compel arbitration. In their opposition, Plaintiffs posit two arguments: that they may enforce arbitration under FINRA Rule 12200 because they are T. Rowe Price's "customers" or, alternatively, that they may enforce to the Arbitration Clause of the New Account Form as the assignees of Rhea Needle's rights and as third-party beneficiaries of the contract. These arguments will be addressed in turn.

4

*1.  Determination of Customer Under FINRA Rule 12200*

In view of T. Rowe Price's argument that Plaintiffs do not qualify as its "customers," this Court has considered Rule 12200, which requires a FINRA member, such as T. Rowe Price,[4] to arbitrate certain claims brought against it by a "customer."  *Reading Health Sys.*, 900 F.3d at 90. More specifically, the Rule requires a member to arbitrate a dispute if (1) arbitration is "[r]equested by the customer," (2) "[t]he dispute is between a customer and a member," and (3) "[t]he dispute arises in connection with the business activities of the member."

Plaintiffs contend that they can be considered T. Rowe Price's "customers" because they held beneficiary accounts set up by T. Rowe Price to effectuate the transfer of funds from the IRA to Plaintiffs.  In support, Plaintiffs cite to *Stagliano v. O.N. Equity Sales Co.*, wherein a court in this district defined "customer" as "one who either (1) purchases a good or service from a FINRA member; or (2) has an account with a FINRA member."  2020 WL 3172891, at *4 (E.D. Pa. June 15, 2020) (citing *Citigroup Glob. Mkts. Inc. v. Abbar*, 761 F.3d 268, 276 (2d Cir. 2014)).

Importantly, Rule 12200 requires arbitration *only* where the dispute arises "in connection with the business activities of the member."  Courts have interpreted this third requirement of Rule 12200 as only requiring arbitration of disputes "arising from the account" of the customer.  *See, e.g.*, *Citigroup Glob. Mkts.*, 761 F.3d at 275.  Regardless of whether Plaintiffs would be considered customers for another purpose, the dispute Plaintiffs presently seek to arbitrate against T. Rowe Price does not concern *their own* personal or beneficiary accounts, through which they arguably could be considered T. Rowe Price's "customers."  Rather, Plaintiffs seek to compel the arbitration of disputes that allegedly arose from the management of their mother's IRA account.  As T. Rowe

---

[4]     Only T. Rowe Price Investment Services, Inc., is a member of FINRA.  However, for purposes of clarity and consistency, this Court will continue to refer to T. Rowe Price, collectively, throughout its analysis.

Price argues, allowing a perceived customer to invoke Rule 12200 to arbitrate disputes arising from *any* customer's account would have "no apparent limiting principle." (Defs.' Br., ECF 31, at p. 14). This Court agrees and finds that, at this preliminary stage, T. Rowe Price has shown a likelihood of success on the merits of its defense to Plaintiffs' arbitration claim.

### 2.  Written Arbitration Agreement

Plaintiffs also argue that, as third-party beneficiaries or, alternatively, as assignees of Rhea Needle's rights following her death, they may compel T. Rowe Price to arbitrate Plaintiffs' claims under the Arbitration Clause in Rhea Needle's IRA account opening documents. Plaintiffs are mistaken. The Arbitration Clause provides, *in part*, that the account holder—Rhea Needle— "agrees to settle by arbitration any controversy between myself and [T. Rowe] Price." (New Account Form, ECF 31, at p. 64). It is undisputed that Plaintiffs are not parties to the underlying contract, between T. Rowe Price and Rhea Needle, that contains the Arbitration Clause. Nonetheless, under certain circumstances, nonparties to an agreement to arbitrate may bind a signatory party "when traditional principles of state law allow a contract to be enforced by or against nonparties[.]" *Kipp v. Weyerhauser Co.*, 354 F. Supp. 3d 622, 626 (E.D. Pa. 2018) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)) (other citations, quotation marks, and alterations omitted). Such traditional principles may include, *inter alia*, third-party beneficiary and assignment.

Plaintiffs contend that they are the "intended beneficiaries" of T. Rowe Price's agreement with Rhea Needle and, therefore, they can bind T. Rowe Price to arbitrate their claims. In general, a party cannot be required to submit to the arbitration of a dispute that the party has not agreed to arbitrate. *See Dougherty v. VFG, LLC*, 118 F. Supp. 3d 699, 711 (E.D. Pa. 2015) (citing *AT & T Tech. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986). "[C]ourts have been willing to apply

third party beneficiary law in examining the contractual standing of a non-signatory party to a dispute, provided there is an expression of the requisite intent between the third party and the plaintiff to arbitrate their claims." *In re Prudential Ins. Co. of Am. Sales Prac. Litig. All Agent Actions*, 133 F.3d 225, 229 (3d Cir. 1998) (citations omitted). Here, there is no such expression of the requisite intent between Plaintiffs and T. Rowe Price. To the contrary, the Arbitration Clause relied on only provides that Rhea Needle agreed to arbitrate "any controversy **between myself and [T. Rowe] Price**." (New Account Form, ECF 31, at p. 64 (emphasis added)). Thus, the Arbitration Clause provides no expression of intent to arbitrate that could extend to claims between Plaintiffs and T. Rowe Price. Absent any such expression of intent to arbitrate, Plaintiffs' reliance on the Arbitration Clause is unfounded.

Plaintiffs also argue that they can invoke the Arbitration Clause as the assignees of Rhea Needle's rights under her contract with T. Rowe Price. Specifically, Plaintiffs contend that upon Rhea Needle's death, her rights under the New Account Form passed to her named beneficiaries of the IRA—Plaintiffs and their sister—pursuant to the Uniform Transfer on Death Security Registration Act ("UTDSRA"), a statute adopted in Pennsylvania. 20 Pa. Cons. Stat. §§ 6401–13. Plaintiffs are again mistaken.

The UTDSRA provides, in relevant part: "On death of a sole owner or the last to die of all multiple owners, ownership of securities registered in beneficiary form passes to the beneficiary or beneficiaries who survive all owners." 20 Pa. Cons. Stat. § 6407. It is clear from the plain language of the UTDSRA that the statute concerns the transfer of the actual securities from an original owner to a named beneficiary upon the owner's death, not the transfer of rights under the underlying contract. *See id.* § 6407 ("On death of a sole owner . . . , ownership **of securities** registered in beneficiary form passes to the beneficiary or beneficiaries who survive all owners."

(emphasis added)).   As such, under the UTDSRA, upon Rhea Needle's death, Plaintiffs, as the named beneficiaries, became the owners of the *securities* held in Rhea Needle's account; they did not become owners of, or the "assignees" to, any rights and obligations associated with Rhea Needle's IRA.[5]

For the foregoing reasons, T. Rowe Price has demonstrated a likelihood of success on the merits of its defense to Plaintiffs' claim to compel arbitration.

### *Irreparable Harm*

"[F]orcing a party to arbitrate a claim it did not agree to arbitrate constitutes *per se* irreparable harm."  *AT & T Mobility LLC v. Smith*, 2011 WL 5924460, at *9 (E.D. Pa. Oct. 7, 2011) (citing *PaineWebber Inc. v. Hartmann*, 921 F.3d 507, 514–15 (3d Cir. 1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002)).  Having determined that T. Rowe Price never agreed to arbitrate any claims brought by Plaintiffs, this factor is satisfied.

### *Balance of Hardships*

T. Rowe Price also argues that an injunction halting the FINRA arbitration will not harm Plaintiffs, as they commenced this lawsuit prior to initiating the FINRA arbitration.  This Court agrees.  A preliminary injunction to prevent Plaintiffs from proceeding with their arbitration will, at most, delay the resolution of Plaintiffs' securities fraud claims.  Notably, Plaintiffs initiated this lawsuit against T. Rowe Price alleging securities fraud, and later amended the complaint to seek an order to compel arbitration.  It is fair to assume that Plaintiffs intended for this Court to rule on the arbitrability of their claims as a threshold matter.  Conversely, T. Rowe Price would be prejudiced if forced to continue defending against Plaintiffs' claims in arbitration, given that the

---

[5]    T. Rowe Price anticipatorily argues that any argument by Plaintiffs premised on equitable estoppel would be unsupported.  Plaintiffs have not raised any equitable estoppel argument.  Therefore, this Court will not address it.

arbitrability of the claims is contested.  Thus, the potential harm T. Rowe Price could suffer if this Court did not issue an injunction outweighs any potential delay that Plaintiffs might experience. For these reasons, this Court finds that the balance of the parties' hardships weighs in favor of granting the requested relief.

### Public Interest

Where the movant "demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor" the movant.  *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994).  Further, "[w]hen the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis[.]"  *Macquarie Holdings USA Inc. v. Rode*, 2012 WL 12882417, at *4 (C.D. Cal. Jan. 17, 2012) (citing *Stormans, Inc. v. Selecky*, 586 F.3d 1108, 1138–39 (9th Cir. 2009)).  Here, T. Rowe Price has demonstrated a likelihood of success on the merits and that it would be irreparably harmed if forced to arbitrate Plaintiffs' claims.  An injunction would be narrow and limited only to T. Rowe Price and Plaintiffs. As such, this Court finds that the public interest favors granting the motion for a preliminary injunction.

**CONCLUSION**

For the foregoing reasons, the four cited factors for relief under Rule 65, when considered together, weigh in favor of granting the requested preliminary injunction.  *See Reilly*, 858 F.3d at 179 (3d Cir. 2017).  Accordingly, Plaintiffs are enjoined from proceeding with their FINRA arbitration against T. Rowe Price until this Court has ruled definitively on the arbitrability of the dispute.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.