IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM A. NEEDLE,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 21-4786** |
| **v.** | : | |
| | : | |
| **T ROWE PRICE GROUP INC.,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                     AUGUST 15, 2022

# MEMORANDUM OPINION

**INTRODUCTION**

    This is a case of unrealized expectations. Plaintiffs William A. Needle and Michael R. Needle (collectively, "Plaintiffs") are the sons of Rhea Needle. Defendant Edward Dosik ("Dosik") is a certified public accountant and was married to Susan, Plaintiffs' sister, until she passed away. For nearly twenty years, Dosik managed Rhea Needle's finances on her behalf pursuant to a general power of attorney. Upon Rhea Needle's death, Plaintiffs and Susan received proportional shares of the securities in Rhea Needle's Individual Retirement Account as her named beneficiaries. Plaintiffs were, however, dissatisfied with the amount each received and blame Dosik for mismanaging Rhea Needle's investments.

    Seeking relief, Plaintiffs filed an action on March 14, 2019, in the Philadelphia Orphans' Court requesting an accounting of Rhea Needle's Estate from Dosik. On October 30, 2021, Plaintiffs filed a complaint in this court against Dosik and additional Defendants.[1] [ECF 1]. The

---

[1]     This action was filed against Dosik in his individual capacity and in his capacity as the personal representative of the Estate of Susan Dosik, and against T. Rowe Price Group, Inc., T. Rowe Price Associates, Inc., and T. Rowe Price Investment Services, Inc. (collectively, "T. Rowe Price"). This Memorandum Opinion addresses *only* Dosik's motion to dismiss the claims against him in his individual capacity.

complaint was subsequently amended to assert claims against Dosik, in his individual capacity, for: violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Securities and Exchange Commission ("SEC") Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a); violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), 73 Pa. Cons. Stat. §§ 201-2(4)(vii), 201-2(4)(xx), and 201-3; fraud and deceit; breach of fiduciary duty; and negligence. [ECF 23].

Before this Court are Dosik's motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6), which seeks to dismiss all claims against him in his individual capacity, [ECF 36], Plaintiffs' response in opposition, [ECF 58], Dosik's reply, [ECF 61], and Dosik's supplemental filings, [ECF 72, 73]. The issues raised in the motion to dismiss have been fully briefed and are ripe for disposition. For the reasons set forth, Dosik's motion to dismiss is granted.

**BACKGROUND**

When ruling on a motion to dismiss, a court must accept all well-pleaded facts in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The facts relevant to the motion to dismiss are summarized as follows:[2]

> Plaintiffs and Susan are the children of Rhea and Lawrence Needle. Susan is now deceased, and Dosik, her husband, serves as the executor of her estate.
>
> *Dosik's Management of Rhea Needle's Finances*
>
> For many years, Rhea and Lawrence Needle managed their own savings and investments with the advice of professionals. In 1998, Rhea Needle appointed

---

[2] These facts are drawn from Plaintiffs' amended complaint, [ECF 23], and the exhibits referenced therein. This Court has taken judicial notice of the public record in connection with the parties' proceedings before the Philadelphia Orphans' Court and Superior Court of Pennsylvania. *See Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) ("[A] court may take judicial notice of the record from a previous court proceeding between the parties.") (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir.1988)).

Plaintiff Michael Needle as her agent under a general and durable power of attorney. Lawrence Needle died on December 8, 2001.

A few weeks later, on December 26, 2001,[3] Rhea Needle executed a new general power of attorney (the "Power of Attorney") authorizing Dosik to open investment accounts and to buy, sell, and trade securities on her behalf. Dosik, a certified public accountant, holds himself out as investment advisor. Pursuant to the Power of Attorney, Dosik opened, in Rhea Needle's name, two accounts with T. Rowe Price—an Individual Retirement Account (the "IRA") and a brokerage account that Plaintiffs identified as a "Taxable Account."[4] Plaintiffs and Susan were named as the beneficiaries of the IRA in the event of Rhea Needle's death.

Dosik managed the two investment accounts during Rhea Needle's life. Upon Rhea Needle's death on September 18, 2018, the ownership of a proportional share of the securities held in the IRA transferred to each of the three named beneficiaries. The securities were sold, and the named beneficiaries received the sale proceeds in early March 2019.

*Orphans' Court Proceedings*

As noted, on March 14, 2019, Plaintiffs filed a petition with the Philadelphia Orphans' Court to compel Dosik to file an accounting of his administration of Rhea Needle's financial matters as her agent under the Power of Attorney. On October 30, 2019, Plaintiffs received the accounting from Dosik, which included, *inter alia*, the dates and amounts of contributions to the IRA—information that Plaintiffs did not have prior to Dosik's submission. Thereafter, Plaintiffs filed six objections to the accounting. In three of these objections, Plaintiffs sought to surcharge Dosik for his actions as Rhea Needle's agent, arguing that Dosik had violated his duties under 20 Pa. Cons. Stat. § 5601.3(d). The other objections concerned Dosik's alleged failure to account for the contents of a safety deposit box and the alleged excessiveness and inappropriateness of a commission and fee sought by Dosik through the accounting. On February 12, 2020, the Orphans' Court dismissed the three objections seeking a surcharge on the grounds that Plaintiffs lacked standing, leaving the other objections, regarding the safety deposit box and the commission and fees, pending.

On September 21, 2021, Plaintiffs petitioned the Orphans' Court to appoint them as temporary fiduciaries of the Estate of Rhea Needle in order to bring claims

---

[3] Plaintiffs' amended complaint indicates that Rhea Needle executed the Power of Attorney in 2002. (Am. Compl., ECF 23, ¶¶ 15–16). However, the document itself, which Plaintiffs reference in the amended complaint, is dated December 26, 2001. (General Power of Att'y & Full Trading Authorization With Privilege to Withdraw Money and/or Securities, ECF 16-2, at p. 1).

[4] Dosik's management of the Taxable Account is not at issue here. In their amended complaint, Plaintiffs note that any claims with respect to the Taxable Account belong to the Estate of Rhea Needle, of which Dosik serves as the Executor.

against Dosik and T. Rowe Price on behalf of Rhea Needle's Estate. By Decree dated October 20, 2021, the Orphans' Court denied Plaintiffs' petition to be appointed as temporary fiduciaries, citing a lack of authority. Plaintiffs appealed that decision to the Superior Court of Pennsylvania, where, as of August 15, 2022, the appeal remains pending. On October 30, 2021, Plaintiffs commenced this federal action, allegedly "to preserve their rights with respect to the IRA." (Am. Compl., ECF 23, ¶ 82).

On November 8, 2021, the Orphans' Court issued a Decree granting one and denying two of Plaintiffs' three objections to the accounting. This Decree also rendered final the February 12, 2020 Order dismissing Plaintiffs' first three objections related to the surcharge. On December 3, 2021, Plaintiffs appealed the dismissals of the five denied objections to the Superior Court.

On April 22, 2022, the Superior Court issued an Order quashing Plaintiffs' appeal with respect to the dismissal of the first three surcharge objections for lack of standing, and quashing Plaintiffs' appeal with respect to their objection regarding the safety deposit box. The appeal related to the objection involving Dosik's fee request remains pending.

Plaintiffs did not appeal the Superior Court's April 22, 2022 quashal, and the time to do so has expired.

**LEGAL STANDARD**

Dosik filed the underlying motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6). Rule 12(b)(1) permits a defendant to challenge a civil action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (citations omitted). When a defendant files a Rule 12(b)(1) motion prior to an answer, as Dosik did here, the motion will be considered a facial

4


challenge to jurisdiction.[5] *Const. Party*, 757 F.3d at 358. In reviewing a facial challenge that contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). The burden of establishing subject-matter jurisdiction rests with the party asserting its existence—here, Plaintiffs. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).

When considering a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court may also consider "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004); *see also* Fed. R. Civ. P. 10(c). Any "[t]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" may be disregarded. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) (internal citation omitted).

To survive a Rule 12(b)(6) challenge, the plaintiff must plead facts sufficient to state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Therefore, the operative complaint must contain sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The operative complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted).

---

[5] Conversely, a factual challenge may occur at any stage of the proceedings. *Const. Party*, 757 F.3d at 358 (citing *Mortensen*, 549 F.2d at 889–92).

**DISCUSSION**

Dosik presents several arguments as to why this Court should dismiss Plaintiffs' claims against him in his individual capacity, including, *to wit*: that Plaintiffs' Securities Exchange Act (Count II) and UTPCPL (Count IV) claims should be dismissed for lack of statutory standing; that Plaintiffs' fraud claim (Count VI) should be dismissed as time-barred and for failure to allege the requisite elements of the claim; and that Plaintiffs' breach of fiduciary duty (Count VII) and negligence (Count VIII) claims should be dismissed because Plaintiffs have not alleged that Dosik owed them any duty. This Court will address each of these arguments in turn.[6]

---

[6] In addition to these arguments, Dosik contends that this Court should invoke the doctrine of abstention and, accordingly, dismiss this action for lack of subject-matter jurisdiction pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). To determine whether the circumstances merit the exceptional exercise of abstention, the threshold question is whether the state and federal actions are parallel, *i.e.*, involve the same parties and "'substantially identical' claims, raising 'nearly identical allegations and issues.'" *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005) (citations omitted). Courts should apply the abstention doctrine only in "rare circumstance[s]." *See Westfield Ins. Co. v. Interline Brands, Inc.*, 2013 WL 5503181, at *2 (D.N.J. Oct. 1, 2013) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15–16 (1983)).

The issues raised in this action and in the Orphans' Court are not sufficiently identical so as to justify abstention. Plaintiffs' Orphans' Court litigation concerns Dosik's alleged breach of fiduciary duty. Plaintiffs' federal action includes claims for violations of the Securities Exchange Act and SEC Rule 10b-5, and common-law fraud and negligence claims. Although the factual allegations underlying the state and federal actions are the same, the legal issues involved—including the presence of a federal securities fraud claim over which the federal courts have exclusive jurisdiction, *see* 15 U.S.C. § 78aa(a)—are not. For these reasons, this Court finds that the state and federal proceedings are not parallel. Thus, no "exceptional circumstances" are present that would direct dismissal of Plaintiffs' claims on abstention grounds. *See Colo. River*, 424 U.S. at 813.

Dosik also argues that that all of Plaintiffs' claims against him are precluded under the doctrine of *res judicata*, or claim preclusion, because these claims were fully litigated before the Orphans' Court and appealed to the Superior Court, which subsequently quashed the appeal. The doctrine of *res judicata* "protect[s] litigants from the burden of relitigating an identical issue with the same party or his privy and . . . promot[es] judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979). For *res judicata* to apply, the following requirements must be met: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991). To be considered a final judgment on the merits, the judgment must have been made "by a court of competent jurisdiction." *Moncrief v. Chase Manhattan Mortg. Corp.*, 275 F. App'x 149, 153 (3d Cir. 2008) (citation omitted).

### *Violation of the Securities Exchange Act (Count II)*

Dosik argues that Plaintiffs lack statutory standing to bring a Securities Exchange Act ("SEA") claim against him because Plaintiffs are neither "purchasers" nor "sellers" of securities, as defined within the meaning of Section 10(b).[7] In their response, Plaintiffs argue that they should be considered "sellers" by virtue of the sales of the securities and the resulting proceeds they received through the IRA distributions.

For a plausible claim under Section 10(b) of the SEA, a plaintiff must allege that the defendant used "manipulative or deceptive" practices in contravention of an SEC Rule "in connection with the purchase or sale" of securities. *See* 15 U.S.C. § 78j(b). Under SEC Rule 10b-5, it is unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014) (quoting 17 C.F.R. § 240.10b-5(b)). Only "*purchasers* and *sellers* of securities" may bring

---

Here, it is unclear whether Plaintiffs' claims have been adjudicated to a final judgment on the merits by a court of competent jurisdiction. Notably, Dosik has not provided this Court with all the documents that would be necessary to determine whether the claims were fully and finally litigated. *See Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 158 (3d Cir. 2001) ("The party seeking to take advantage of claim preclusion has the burden of establishing it."). Nonetheless, as discussed below, because Plaintiffs' claims against Dosik fail for other reasons, this Court need not address Dosik's *res judicata* argument.

Finally, Dosik argues that this Court should disregard Plaintiffs' response in opposition to the motion to dismiss because it was filed one day late. Dosik contends that Plaintiffs' late filing "evidences a continued disregard for the Federal Rules of Civil Procedure and the Orders of this Court." (Def.'s Reply, ECF 61, at p. 1). Notably, this is not the first time Plaintiffs have missed a deadline. Nonetheless, this Court finds no reason why this one-day lateness should preclude consideration of Plaintiffs' arguments. Dosik has not proffered any prejudice due to this lateness.

[7] Dosik also argues that the claim is time-barred by the applicable two-year statute of limitations and that the allegations in the complaint fail to meet the heightened pleading requirement under the Private Securities Litigation Reform Act. T. Rowe Price join Dosik's motion to dismiss the Securities Exchange Act claim on statute of limitations grounds, noting that a similar claim against them, at Count III, is premised on the same factual allegations as that against Dosik. [ECF 40]. This Court will address Plaintiffs' claims against T. Rowe Price when addressing T. Rowe Price's motion to dismiss. [*See* ECF 32].

claims for securities fraud under Section 10(b) and Rule 10b-5. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731–32 (1975) (citations omitted) (emphasis added). While the SEA does not expressly define the terms "purchaser" or "seller," it does provide that a "purchase" includes "any contract to buy, purchase or otherwise acquire," 15 U.S.C. § 78c(a)(13), and a "sale" includes "any contract to sell or otherwise dispose of," *id.* § 78c(a)(14). Black's Law Dictionary defines "purchaser" as "[s]omeone who obtains property for money or other valuable consideration" or "a buyer." *Purchaser*, Black's Law Dictionary (11th ed. 2019). "Seller" is defined generally as "a person who sells anything." *Seller*, Black's Law Dictionary (11th ed. 2019).

Notwithstanding the fact that the securities that Plaintiffs received as the beneficiaries of the IRA were sold for distribution to the beneficiaries, Plaintiffs have not alleged any facts to support the requisite causal connection between the misconduct alleged with respect to Rhea Needle's IRA and any alleged loss to Plaintiffs arising from the sale of the securities they received as beneficiaries. As noted, to assert a claim under Section 10(b) of the SEA, a plaintiff must allege facts to support the alleged unlawful practice "*in connection with* the purchase or sale of [the] security . . . ." 15 U.S.C. § 78j(b) (emphasis added). Plaintiffs' claims are premised on an alleged fraud with respect to the management of the securities in Rhea Needle's IRA. Notably, Plaintiffs make no allegations with respect to any unlawful conduct *by Dosik* "in connection with" the sale of the securities from their beneficiary accounts. In the absence of such allegations, Plaintiffs' Section 10(b) claim for violation of SEC Rule 10b-5 fails as a matter of law. *See Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 332 F.R.D. 556, 577 (M.D. Tenn. 2019) ("Rule 10b-5 prohibits misstatements *in connection with* the purchase or sale of any security.") (emphasis added).

Nonetheless, in support of their argument that they are sellers of securities for SEA purposes, Plaintiffs rely on *McFeeley v. Florig*, 966 F. Supp. 378 (E.D. Pa. 1997). Plaintiffs'

reliance is misplaced. In *McFeeley*, five sisters, who received securities as a gift from their father, sued their brother for fraud related to the securities. *Id.* The *McFeeley* court noted that "[h]olders of securities received as gifts are neither sellers nor purchasers" for Section 10(b) purposes. *Id.* at p. 382. However, the sisters qualified as "sellers" because they were contractually obligated to sell their shares of the securities to their brother, and once that sale took place, they became "sellers." *Id.* at 382; *accord Blue Chip Stamps*, 421 U.S. 751 ("[T]he holders of puts, calls, options, and other contractual rights or duties to purchase or sell securities have been recognized as 'purchasers' or 'sellers' of securities for purposes of Rule 10b-5 . . . because the definitional provisions of the 1934 Act themselves grant them such a status."). Here, by contrast, there is no indication, in the amended complaint or elsewhere, that Plaintiffs were *contractually obligated* to sell the securities they received upon Rhea Needle's death to anyone, least of all to Dosik. To the contrary, Plaintiffs received, as a "gift" by reason of their status as beneficiaries, the proceeds of the IRA. Thus, *McFeeley* does not support Plaintiffs' argument that they are "sellers."

Plaintiffs also argue that they have standing to bring this SEA claim derived from *their mother's* rights under Section 10(b)—rights that they argue were assigned to them under the Uniform Transfer on Death Security Registration Act (the "UTDSRA"), an Act that has been adopted in Pennsylvania. This Court disagrees for reasons set forth in the Memorandum Opinion dated March 28, 2022. [ECF 62]. Specifically, in that Opinion, which involved T. Rowe Price's motion for a preliminary injunction enjoining arbitration, this Court found that Plaintiffs could not invoke an arbitration clause contained in the IRA opening document by virtue of their purported status as assignees of Rhea Needle's contractual rights upon her death. Further, this Court found that Plaintiffs were *not* assignees of their mother's contractual rights under the UTDSRA. (*See id.* at pp. 7–8). In relevant part, the UTDSRA provides that "[o]n death of a sole owner . . . , ownership

9

*of securities* registered in beneficiary form passes to the beneficiary or beneficiaries who survive all owners." 20 Pa. Cons. Stat. § 6407 (emphasis added). It is clear from the plain language of the UTDSRA that the statute concerns the transfer of the actual *securities* from an original owner to a named beneficiary upon the owner's death, not the transfer of rights under the underlying contract. As such, upon Rhea Needle's death, Plaintiffs and Susan, as the named beneficiaries, acquired ownership of the securities held in the IRA; they did not become the owners of, or assignees to, any contractual rights and obligations associated with the IRA itself.

Because Plaintiffs are not "purchasers" or "sellers" under Section 10(b) of the SEA and Rule 10b-5, Plaintiffs lack standing for an SEA claim against Dosik. As such, Plaintiffs' claim for violation of the Securities Exchange Act at Count II is dismissed.

### *Violation of the UTPCPL (Count IV)*

As to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") claim, Dosik argues, *inter alia*, that the claim must be dismissed for lack of standing because Plaintiffs are neither "purchasers" nor "lessors" of Dosik's services. Plaintiffs disagree.

The UTPCPL provides a private right of action to a person who "purchases or leases goods or services" and "suffers any ascertainable loss of money or property," 73 Pa. Cons. Stat. § 201-9.2, as a result of unlawful "unfair or deceptive acts or practices" as defined by the statute, *id.* § 201-3.[8] The UTPCPL also does not expressly define "purchaser" or "lessor." However, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has explained that "those who may receive a benefit from the purchase" are distinct from "purchasers" and "lessors" and, thus, are not protected under the statute. *Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65 (3d Cir. 1994); *see also Zerpol Corp. v. DMP Corp.*, 561 F.

---

[8] "Unfair or deceptive acts or practices" is defined as one or more actions in a comprehensive list provided at 73 Pa. Cons. Stat. § 201-2(4).

Supp. 404, 415 (E.D. Pa. 1983) ("[A] private cause of action under the [UTPCPL] is available only to purchasers or lessors of goods . . . ." (citing 73 Pa. Cons. Stat. § 201-9.2)).

Based on the allegations in the amended complaint, Plaintiffs are neither purchasers nor lessors under the Third Circuit's definitions. Plaintiffs never purchased any goods or services from Dosik or anyone in connection with their mother's IRA. Rather, as named beneficiaries of the IRA, they received a *benefit* from their mother's IRA, which was managed by Dosik. *See Gemini Physical Therapy & Rehab.*, 40 F.3d at 65. As such, Plaintiffs do not fall within the class of individuals protected under the UTPCPL. *See Branche v. Wells Fargo Home Mortg., Inc.*, 624 F. App'x 61, 64 (3d Cir. 2015) (concluding plaintiff did not have standing to sue bank under the UTPCPL where plaintiff's husband—not plaintiff—obtained mortgage from bank).

Plaintiffs also argue that they have standing for their UTPCPL claim because (1) they are the intended third-party beneficiaries of the IRA *opening* document and the Power of Attorney and (2) they are the *assignees* of Rhea Needle's rights under the IRA opening document. Plaintiffs are mistaken. As previously noted, this Court has found that Plaintiffs could not invoke the arbitration clause in the IRA opening document by virtue of their alleged status as assignees—or third-party beneficiaries—of Rhea Needle's rights upon her death, (*see* Mem. Op., ECF 62, at pp. 6–8). Plaintiffs fare no better in their arguments in support of their UTPCPL claim against Dosik.

Plaintiffs rely on *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983), to argue that they have standing as third-party intended beneficiaries of the IRA. Their reliance is misplaced. In *Guy*, the Supreme Court of Pennsylvania held that a legatee could sue a testator's lawyer for malpractice in drafting a will, as the legatee was the intended beneficiary of a contract between the testator and the lawyer. *Id.* at 751–52. *Guy* involved common-law malpractice claims, not the UTPCPL. Thus, the case is inapposite here. The UTPCPL does not allow those who merely *benefit* from a

11

transaction to sue under the statute; only "purchasers" or "lessors" may bring such a claim. *Gemini Physical Therapy & Rehab.*, 40 F.3d at 65. Because Plaintiffs are neither purchasers nor lessors under the UTPCPL, they do not have standing for their UTPCPL claim as third-party beneficiaries of the IRA.

Plaintiffs' argument that they are assignees of their mother's rights also fails for the same reasons as their Securities Exchange Act claim fails. The UTDSRA does not provide for the transfer of Rhea Needle's legal rights under the IRA to her named beneficiaries, but rather the transfer of the securities held in the account themselves. *See* 20 Pa. Cons. Stat. § 6407. Thus, Plaintiffs do not have standing for their UTPCPL claim based on assignment.

For the reasons noted, because Plaintiffs are neither "purchasers" nor "lessors" of goods or services, nor are they third-party beneficiaries or assignees, they do not have standing for their UTPCPL claim against Dosik. Therefore, Plaintiffs' claim for violation of the UTPCPL at Count IV is dismissed.

### *Fraud (Count IV)*

Dosik argues that Plaintiffs' fraud claim should be dismissed because (1) the claim is barred by the applicable two-year statute of limitations and (2) the allegations in the complaint fail to meet the heightened pleading requirement for fraud. Plaintiffs disagree.

Claims of fraud under Pennsylvania law[9] are governed by a two-year statute of limitations. 42 Pa. Cons. Stat. § 5524(7). The limitations period begins to run when "the right to institute and

---

9      For purposes of deciding whether Plaintiffs have stated state-law claims upon which relief can be granted, this Court will apply Pennsylvania law. Generally, a federal court sitting in diversity is to apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 302 U.S. 64, 78–80 (1938); *Schering Corp. v. Sun Ray Drug Co.*, 320 F.2d 72, 76 (3d Cir. 1963). Dosik and Plaintiffs have both cited Pennsylvania law in their respective briefs. While Plaintiffs also reference Maryland law, they have not made any argument as to why Maryland or any other state law should apply. Therefore, this Court will apply Pennsylvania law to Plaintiffs' common-law claims.

maintain a suit arises." *Rodgers v. Lincoln Benefit Life Co.*, 845 F. App'x 145, 147 (3d Cir. 2021) (quoting *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005)). The discovery rule may toll the statute of limitations in situations "where the injured party is unable, 'despite the exercise of due diligence, to know of the injury or its cause.'" *Id.* at 148 (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)). Importantly, a motion to dismiss premised on the expiration of a statute of limitations is only proper "when it clearly appears on the face of the complaint that a claim is time-barred." *See Westwood-Booth v. Davy-Loewy Ltd.*, 1999 WL 219897, at *1 (E.D. Pa. Apr. 13, 1999) (collecting cases). Here, the statute of limitations clock began ticking when Plaintiffs discovered—or should have discovered, through due diligence—the facts underlying their fraud claim against Dosik. *See Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 144 (3d Cir. 1997).

Dosik contends that Plaintiffs discovered the facts giving rise to their alleged fraud claim between December 2017 and June 2019, more than two years before the initial complaint was filed (filing was October 30, 2021). Specifically, Dosik argues that certain allegations in the amended complaint "strongly suggest[]" that Plaintiffs suspected fraud earlier than October 30, 2019. For example, Plaintiffs allege that they demanded Dosik reveal the amount contained in the IRA on December 6, 2018. (Am. Compl., ECF 23, ¶ 50). On December 24, 2018, Plaintiffs received year-end summaries and a statement from October 2018. (*Id.* ¶ 53). After receiving their respective distributions from the IRA, on March 14, 2019, Plaintiffs petitioned the Orphans' Court to compel Dosik to file an accounting. (*Id.* ¶¶ 56–57).

Plaintiffs, however, argue that Dosik's limitations defense is improper because it does not "clearly appear[] on the face of the pleading." (Pls.' Resp. in Opp., ECF 58, at p. 31 (citing *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002); *Oshiver v. Levin*, 38 F.3d 1380, 1384 n.1

13

(3d Cir. 1994))). Plaintiffs also point to certain paragraphs of the amended complaint indicating that they learned of Dosik's allegedly fraudulent actions when Dosik provided the Orphans' Court-ordered accounting—on October 30, 2019.

After reviewing the allegations in the operative complaint, this Court agrees with Plaintiff and finds that the limitations period began on October 30, 2019. The specific allegations Dosik highlights do not support his contentions that the fraud claim is time-barred. On the contrary, these allegations indicate that Plaintiffs exercised due diligence to ascertain whether a cause of action existed. Taking the allegations in the amended complaint as true, as the Court must at this stage of the proceedings, this Court notes that Plaintiffs only received Dosik's accounting—containing the specific facts underlying the alleged fraud, including the dates and amounts of contributions to the IRA—on October 30, 2019. (*Id.* ¶ 60). Further, it is not "clearly" apparent on the face of the amended complaint that Plaintiffs' claim is time-barred. *See Westwood-Booth*, 1999 WL 219897, at *1. As such, because Plaintiffs filed their initial complaint within two years of receiving Dosik's accounting, their alleged fraud claim is not barred by the statute of limitations, at this stage of the proceedings.

Dosik also argues that Plaintiffs' allegations do not meet the heightened pleading standard for fraud. Specifically, Dosik argues that the amended complaint does not plausibly allege scienter or actual injury. Under Pennsylvania law, a plaintiff alleging fraud must plead facts sufficient to plausibly show: "(1) a representation which is (2) material to the transaction at hand, (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false, and (4) made with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) that the resulting injury was proximately caused by the reliance." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018) (citing *Gibbs v. Ernst*, 647

A.2d 882, 889 (Pa. 1994)) (internal quotation marks omitted).  In addition, Federal Rule of Civil Procedure 9 provides that the plaintiff "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The plaintiff must "inject precision or some measure of substantiation into a fraud claim . . . with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged."  *Shuker*, 885 F.3d at 778 (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

Here, in their amended complaint, Plaintiffs allege that Dosik made "statements and representations" that were "knowingly false and made with the intent, purpose and effect of inducing Rhea Needle and her Agent Michael Needle into placing money in the IRA[.]"  (Am. Compl., ECF 23, ¶ 108).  Importantly, Plaintiffs do not allege that Dosik made any fraudulent statements or representations to *Plaintiffs*, but rather that Dosik made such statements or representations to their mother and Michael Needle *as her agent*.  Absent also from Plaintiffs' amended complaint are facts sufficient to show that Plaintiffs justifiably relied on misrepresentations by Dosik.  Notably, Plaintiffs allege that they sustained damages "as Rhea Needle's registered beneficiaries, assignees, and successors in interest."  (*Id.* ¶ 109).  Plaintiffs do not allege that they themselves suffered any injury that was proximately caused by their reliance on Dosik's alleged misrepresentations.  As previously noted, this Court has determined that Plaintiffs cannot pursue claims against Dosik as third-party intended beneficiaries of the IRA and/or as assignees of their mother's rights.  Thus, Plaintiffs cannot rely on allegations of Rhea Needle's reliance and her injury to support their fraud claim.

Because the amended complaint does not allege that Plaintiffs justifiably relied on any misrepresentations to their detriment (as opposed to Rhea Needle's detriment) or any injury to

15

Plaintiffs as a result of such reliance, Plaintiffs have failed to plead a plausible claim of fraud. *See Shuker*, 885 F.3d at 778. Therefore, Plaintiffs' fraud claim against Dosik at Count IV is dismissed.

### *Breach of Fiduciary Duty (Count VII)*

As to Plaintiffs' claim for breach of fiduciary duty, Dosik argues, *inter alia*, that the claim should be dismissed because Plaintiffs do not allege that Dosik ever owed them a fiduciary duty. To state a claim for breach of fiduciary duty under Pennsylvania law, a plaintiff must first allege facts sufficient to show that a fiduciary relationship existed between the parties. *See, e.g.*, *Grimm v. Discover Fin. Servs.*, 2008 WL 4821695, at *13 (W.D. Pa. Nov. 4, 2008) (dismissing breach of fiduciary duty claim where no fiduciary relationship existed between plaintiffs and their lenders). This "special relationship" is one "involving confidentiality, the repose of special trust or fiduciary responsibilities." *Id.* (citing *eToll Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)).

Similar to their other claims, Plaintiffs argue that they have standing to sue Dosik for breach of the fiduciary duty owed to Rhea Needle, because they are the intended beneficiaries of the IRA and assignees of their mother's rights under the UTDSRA. Plaintiffs are mistaken that their named beneficiary status and/or the UTDSRA affords them a legal basis to pursue claims against Dosik arising from Dosik's alleged mismanagement of the IRA. Arguably, Dosik owed Rhea Needle a fiduciary duty under the Power of Attorney and as the manager of the account. That duty did not extend to any named beneficiaries. The mere fact that Plaintiffs were named as beneficiaries of the IRA did not establish a fiduciary relationship or confer onto Dosik any fiduciary duty toward Plaintiffs. As such, Plaintiffs merely stood to benefit or not from Dosik's duty to Rhea Needle. *See Steele v. First Nat'l Bank of Mifflintown*, 963 F. Supp. 2d 417, 424–25 (M.D. Pa. 2013) (dismissing breach of fiduciary claim brought by beneficiary of a will where beneficiary alleged

only that defendant, through power of attorney, may have owed fiduciary duty to decedent); *cf. In re Walker*, 208 A.3d 427, 476 (Pa. Super. Ct. 2019) (finding beneficiaries of revocable trust did not have standing to sue trustee for mismanagement of trust assets during settlor's lifetime, as trustee did not owe beneficiaries any duty during that time).

To the extent Plaintiffs assert a claim based on Dosik's alleged breach of a fiduciary duty owed to *Plaintiffs*, rather than to Rhea Needle, they similarly fail to state a claim. The amended complaint does not allege any facts establishing the existence of a "special relationship" between Plaintiffs and Dosik giving rise to a fiduciary duty. *See eToll Inc.*, 811 A.2d at 14. Absent any indication that Dosik owed Plaintiffs a fiduciary duty, the amended complaint fails to plausibly allege the elements of a breach of fiduciary duty claim.

Because Plaintiffs have not alleged any plausible claim for breach of a fiduciary duty owed to them, this claim alleging breach of fiduciary duty at Count VII is dismissed.

### *Negligence (Count VIII)*

Lastly, Dosik argues that Plaintiffs' negligence claim should be dismissed because, *inter alia*, Plaintiffs cannot establish the requisite elements of a negligence cause of action as Dosik never owed Plaintiffs a duty of care.

"The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000) (citation omitted); *see also Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994) ("Any action in negligence is premised on the existence of a duty owed by one party to another."). Here, as with their alleged fiduciary duty claim, Plaintiffs do not allege any facts sufficient to plausibly show that Dosik owed *them* a duty of care. Rather, Plaintiffs allege that Dosik breached a duty of care to *Rhea Needle* and that Plaintiffs, as "her beneficiaries, successors in interest and assigns," suffered damages as

17

a result of Dosik's conduct.  As explained, Plaintiffs cannot pursue a claim against Dosik premised on an alleged breach of a duty owed *to their mother* by virtue of their beneficiary status or because they are Rhea Needle's "assigns."  *See Steele*, 963 F. Supp. 2d at 425 (dismissing negligence claim on grounds that beneficiary was not owed duty of care by defendant by virtue of status as decedent's heir).  Because Plaintiffs have not plausibly stated a claim for negligence as it relates to them and cannot establish the requisite elements of a negligence claim, their negligence claim at Count VIII is dismissed.

**CONCLUSION**

For the foregoing reasons, Dosik's motion to dismiss is granted.  Accordingly, Plaintiffs' claims against Dosik, in his individual capacity, (Counts II, IV, VI, VII, and VIII) are dismissed.  This Court notes that, at this time, Plaintiffs' claims against Dosik in his capacity as the personal representative of the Estate of Susan Dosik and against T. Rowe Price remain pending and will be addressed by separate order.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.