# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM A. NEEDLE,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 21-4786** |
| **v.** | : | |
| | : | |
| **T ROWE PRICE GROUP INC.,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                           AUGUST 19, 2022

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiffs William A. Needle and Michael R. Needle (collectively, "Plaintiffs") commenced this civil action against, *inter alia*, Defendants T. Rowe Price Group, Inc., T. Rowe Price Associates, Inc., and T. Rowe Price Investment Services, Inc., (collectively, "T. Rowe Price")[1] premised on claims related to the Individual Retirement Account (the "IRA") of their mother, Rhea Needle. Against T. Rowe Price, Plaintiffs assert a claim to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4; and claims for violation of the Securities Exchange Act of 1934 (the "SEA"), 15 U.S.C. § 78a *et seq.*, and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5; and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), 73 Pa. Cons. Stat. § 201-1 *et seq.* [ECF 23].

In February 2022, Plaintiffs initiated arbitration proceedings against T. Rowe Price before the Financial Industry Regulatory Authority ("FINRA"). On February 10, 2022, T. Rowe Price

---

[1] The Defendants in this matter are T. Rowe Price and Edward Dosik ("Dosik"), in his individual capacity and in his capacity as the Executor of the Estate of Susan Dosik. Plaintiffs' claims against Dosik in his individual capacity were dismissed by Order and Memorandum Opinion dated August 15, 2022, [ECF 78, 79], and the claims against the Estate of Susan Dosik were dismissed by Order dated August 19, 2022, [ECF 80].

moved for a preliminary injunction to prevent Plaintiffs from continuing the FINRA arbitration until the issue of arbitrability was definitively resolved by this Court. [ECF 31]. On March 28, 2022, this Court granted the motion and preliminarily enjoined Plaintiffs from proceeding with arbitration pending a final resolution of the issue of arbitrability. [ECF 62, 63].

Before this Court are T. Rowe Price's motion to dismiss all claims against them filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), [ECF 32], Plaintiffs' response in opposition, [ECF 43], T. Rowe Price's reply, [ECF 50], and T. Rowe Price's supplemental brief, [ECF 76]. The issues raised in the motion have been fully briefed and are ripe for disposition. For the reasons set forth, T. Rowe Price's motion to dismiss is granted.

**BACKGROUND**

When ruling on a motion to dismiss, a court must accept all well-pleaded facts in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The facts relevant to T. Rowe Price's motion to dismiss are summarized as follows:[2]

> Plaintiffs are the sons of Rhea Needle, deceased. T. Rowe Price runs a brokerage firm that provides investment management and retirement services to consumers. Dosik is Rhea Needle's son-in-law who was married to her daughter, Susan (Plaintiffs' sister). Susan is now deceased, and Dosik serves as Executor of her estate.

---

[2] These facts are drawn from Plaintiffs' amended complaint, [ECF 23], and the exhibits referenced therein. This Court has also considered matters of public record in connection with the parties' proceedings before the Philadelphia Orphans' Court and Superior Court of Pennsylvania. *See Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) ("[A] court may take judicial notice of the record from a previous court proceeding between the parties.") (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988)).

*Rhea Needle's T. Rowe Price Brokerage Accounts*

On December 26, 2001,[3] Rhea Needle executed a general power of attorney (the "Power of Attorney") authorizing Dosik to open investment accounts and to buy, sell, and trade securities on her behalf. Pursuant to the Power of Attorney and in Rhea Needle's name, Dosik opened two accounts with T. Rowe Price—an Individual Retirement Account (the "IRA") and a brokerage account Plaintiffs call the "Taxable Account."[4] Plaintiffs and Susan were the three named beneficiaries of the IRA in the event of Rhea Needle's death. Among the documents signed to open the IRA was a Brokerage IRA New Account Form (the "New Account Form"), which contained, *inter alia*, an arbitration clause (the "Arbitration Clause"). The Arbitration Clause provides, in relevant part:

> Predispute Arbitration Clause. I agree to settle by arbitration any controversy between myself and Price [T. Rowe Price Investment Services, Inc.], its parent, or affiliates, and/or any such officers, directors, employees, agents or Price's clearing broker, relating to the Account Agreements, my account, or account transactions, or in any way arising from my brokerage relationship with Price . . . .

(New Account Form, T. Rowe Price's Mot. Ex. B-1, ECF 32, at p. 67).

Dosik managed the IRA until Rhea Needle's death on September 18, 2018. As a result of her death, the ownership of a proportional share of the securities held in the IRA transferred to each of the three named beneficiaries pursuant to the Uniform Transfer on Death Security Registration Act. To effectuate said transfer, each beneficiary completed IRA Distribution Forms, requesting that T. Rowe Price distribute all of the securities in the IRA equally to each one. Consistent with the IRA Distribution Forms, T. Rowe Price created separate beneficiary accounts and transferred each named beneficiary's respective shares of the securities held in the IRA directly to the beneficiary accounts. Thereafter, in March 2019, the shares were sold for cash, and T. Rowe Price issued checks to each named beneficiary as the payout of the proceeds and closed the beneficiary accounts.

*Orphans' Court Proceedings*

Dissatisfied with the amount received, On March 14, 2019, Plaintiffs filed a petition with the Philadelphia Orphans' Court to compel Dosik to file an

---

[3] Plaintiffs' amended complaint indicates that Rhea Needle executed the Power of Attorney in 2002. (Am. Compl., ECF 23, ¶¶ 15–16). However, the document itself, which Plaintiffs reference in the amended complaint, is dated December 26, 2001. (General Power of Att'y & Full Trading Authorization With Privilege to Withdraw Money and/or Securities, ECF 16-2, at p. 1).

[4] Dosik's management of the Taxable Account is not at issue here. In their amended complaint, Plaintiffs note that any claims with respect to the Taxable Account belong to the Estate of Rhea Needle, of which Dosik serves as the Executor.

3

accounting of his administration of Rhea Needle's financial matters, as her agent under the Power of Attorney. On October 30, 2019, Plaintiffs received the requested accounting from Dosik and subsequently filed six objections to the accounting. In three of these objections, Plaintiffs sought to surcharge Dosik for his actions as Rhea Needle's agent, arguing that Dosik had violated his duties under 20 Pa. Cons. Stat. § 5601.3(d). On February 12, 2020, the Orphans' Court dismissed the three objections seeking the surcharge on the grounds that Plaintiffs lacked standing, leaving the other objections pending.

On September 21, 2021, Plaintiffs petitioned the Orphans' Court to appoint them as temporary fiduciaries of the Estate of Rhea Needle in order to bring claims against T. Rowe Price and Dosik on behalf of the Estate. By Decree dated October 20, 2021, the Orphans' Court denied Plaintiffs' petition to be appointed as temporary fiduciaries, citing a lack of authority. Plaintiffs appealed that decision to the Superior Court of Pennsylvania, where the issue remains pending as of August 18, 2022. On October 30, 2021, Plaintiffs commenced this federal action "to preserve their rights with respect to the IRA." (Am. Compl., ECF 23, ¶ 82).

On November 8, 2021, the Orphans' Court issued a Decree denying two and granting one of Plaintiffs' remaining three objections to Dosik's accounting. This Decree also rendered final the February 12, 2020 Order dismissing Plaintiffs' first three objections. On December 3, 2021, Plaintiffs appealed the dismissals of the five objections to the Superior Court.

On April 22, 2022, the Superior Court issued an Order quashing Plaintiffs' appeal with respect to the dismissal of the first three objections for lack of standing and quashing Plaintiffs' appeal with respect to one other objection. Plaintiffs did not appeal the quashal, and the time to do so has expired.

**LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court may also consider "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004); *see also* Fed. R. Civ. P. 10(c). Any "[t]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" may be disregarded. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) (internal citation omitted).

To survive a Rule 12(b)(6) challenge, the plaintiff must plead facts sufficient to state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Therefore, the operative complaint must contain sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The operative complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted).

**DISCUSSION**

As noted, T. Rowe Price moves to dismiss each of the three claims asserted against them. As to Plaintiffs' Federal Arbitration Act claim, T. Rowe Price argues that it should be dismissed because Plaintiffs cannot invoke any written arbitration agreement or statute to compel T. Rowe Price to arbitrate. T. Rowe Price further argues that Plaintiffs' claims under the SEA and the UTPCPL must be dismissed for lack of standing. This Court will address each of these arguments in turn.[5]

---

[5] In their supplemental brief, T. Rowe Price argues that this Court should also dismiss Plaintiffs' claims under the SEA and the UTPCPL under the doctrine of non-mutual collateral estoppel (issue preclusion). Specifically, T. Rowe Price contends that Plaintiffs should be precluded from pursuing claims premised on the allegation that T. Rowe Price "helped Dosik conceal" his purported mismanagement of the IRA because the Orphans' Court already decided that Plaintiffs lack standing to sue Dosik in his individual capacity. (*See* T. Rowe Price's Suppl. Br., ECF 76, at p. 4). Collateral estoppel requires a previous determination that "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from re-litigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (citation omitted); *see also Walzer v. Muriel, Siebert & Co., Inc.*, 221 F. App'x 153, 155 (3d Cir. 2007) (explaining that collateral estoppel, although an affirmative defense, may be raised in a Rule 12(b)(6) motion to dismiss).

Here, it is unclear the precise grounds on which the lower courts decided that Plaintiffs lacked standing to sue Dosik. Notably, T. Rowe Price has not provided this Court with all the documents that would be necessary to determine whether the issues raised here were "necessary to the decision" of the lower court, especially given the differing standing requirements for the claims alleged here and before the

*Claim to Compel Arbitration (Count I)*

As grounds to dismiss Plaintiffs' claim to compel arbitration, T. Rowe Price argues that under FINRA Rule 12200, Plaintiffs were not and are not T. Rowe Price's "customers" with respect to Rhea Needle's IRA. Further, T. Rowe Price argues that no written arbitration agreement exists between Plaintiffs and T. Rowe Price that would compel arbitration. In their response, Plaintiffs incorporate their previous arguments in opposition to T. Rowe Price's motion for a preliminary injunction, *to wit*: that they may enforce arbitration (1) under FINRA Rule 12200 as T. Rowe Price's "customers" and (2) pursuant to the New Account Form, as the assignees of Rhea Needle's rights and/or as third-party beneficiaries of the contract. Neither of Plaintiffs' arguments has merit.

1. FINRA Rule 12200

FINRA is an independent, government-authorized regulator of securities firms and brokerages in the United States.[6] FINRA promulgates rules and guidelines that govern its members. Relevant here, FINRA Rule 12200 requires a FINRA member, such as T. Rowe Price,[7] to arbitrate certain claims brought against it by a "customer." *Reading Health Sys.*, 900 F.3d at 90. Specifically, the Rule requires a member to arbitrate a dispute if (1) arbitration is "[r]equested

---

Orphans' Court. Nonetheless, as discussed below, Plaintiffs' claims against T. Rowe Price fail for other reasons. As such, this Court need not resolve T. Rowe Price's collateral estoppel argument.

T. Rowe Price also argues that all claims against them were waived by Rhea Needle through the Power of Attorney, which included an "indemnification, hold-harmless, and ratification provision." (T. Rowe Price's Br., ECF 32, at p. 5). Because this Court finds that Plaintiffs lack standing for all of their claims against T. Rowe Price, it need not address the issue of waiver under the Power of Attorney.

[6]   *About FINRA*, FINRA, https://www.finra.org/about (last visited July 19, 2022).

[7]   Only T. Rowe Price Investment Services, Inc., is a member of FINRA. However, for purposes of clarity and consistency, this Court will continue to refer to T. Rowe Price, collectively, throughout its analysis.

by the customer," (2) "[t]he dispute is between a customer and a member," and (3) "[t]he dispute arises in connection with the business activities of the member."

Plaintiffs argue that they are T. Rowe Price's "customers" because they held beneficiary accounts set up by T. Rowe Price to effectuate the transfer of funds from the IRA to Plaintiffs. In support, Plaintiffs cite to *Stagliano v. O.N. Equity Sales Co.*, wherein a court in this district defined "customer" as "one who either (1) purchases a good or service from a FINRA member; or (2) has an account with a FINRA member." 2020 WL 3172891, at *4 (E.D. Pa. June 15, 2020) (citing *Citigroup Glob. Mkts. Inc. v. Abbar*, 761 F.3d 268, 276 (2d Cir. 2014)).

Importantly, the third component of Rule 12200 requires arbitration *only* where the dispute arises "in connection with the business activities of the member." Courts have interpreted this third requirement of Rule 12200 as only requiring arbitration of disputes "arising from the account" of the customer. *See, e.g.*, *Citigroup Glob. Mkts.*, 761 F.3d at 275. Regardless of whether Plaintiffs would be considered customers for another purpose, the dispute Plaintiffs presently seek to arbitrate against T. Rowe Price does not concern their own personal or beneficiary accounts. Rather, Plaintiffs seek to compel the arbitration of disputes that allegedly arose from the management of their *mother's* IRA. As T. Rowe Price argues, allowing a perceived customer to invoke Rule 12200 to arbitrate disputes arising from *any* customer's account would have "no apparent limiting principle." (T. Rowe Price's Br., ECF 32, at p. 18). This Court agrees and, accordingly, finds that Plaintiffs cannot invoke Rule 12200 to compel T. Rowe Price to arbitrate Plaintiffs' specific claims.

2. *Written Arbitration Agreement*

Plaintiffs next argue that they may compel T. Rowe Price to arbitrate Plaintiffs' claims under the Arbitration Clause in Rhea Needle's IRA New Account Form as third-party beneficiaries

7

or, alternatively, as assignees of Rhea Needle's rights following her death. Plaintiffs are mistaken. The Arbitration Clause provides, in relevant part, that the account holder—Rhea Needle—"agrees to settle by arbitration any controversy between [herself] and [T. Rowe] Price." (New Account Form, ECF 32, at p. 67). It is undisputed that Plaintiffs are not the parties to the underlying contract between T. Rowe Price and Rhea Needle that contains the Arbitration Clause.

Nonetheless, under certain circumstances, nonparties to an agreement to arbitrate may bind a signatory party "when traditional principles of state law allow a contract to be enforced by or against nonparties[.]" *Kipp v. Weyerhauser Co.*, 354 F. Supp. 3d 622, 626 (E.D. Pa. 2018) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)) (other citations, quotation marks, and alterations omitted). Such traditional principles may include, *inter alia*, third-party beneficiary and assignment. Plaintiffs contend that they are the "intended beneficiaries" of T. Rowe Price's agreement with Rhea Needle and, therefore, they can bind T. Rowe Price to arbitrate their claims. In general, a party cannot be required to submit to the arbitration of a dispute that the party has not agreed to arbitrate. *See Dougherty v. VFG, LLC*, 118 F. Supp. 3d 699, 711 (E.D. Pa. 2015) (citing *AT & T Tech. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986). "[C]ourts have been willing to apply third party beneficiary law in examining the contractual standing of a non-signatory party to a dispute, provided there is an expression of the requisite intent between the third party and the plaintiff to arbitrate their claims." *In re Prudential Ins. Co. of Am. Sales Prac. Litig. All Agent Actions*, 133 F.3d 225, 229 (3d Cir. 1998) (citations omitted). Here, there is no such expression of the requisite intent between Plaintiffs and T. Rowe Price. To the contrary, the Arbitration Clause Plaintiffs rely on only provides that Rhea Needle agreed to arbitrate "any controversy **between [herself] and [T. Rowe] Price**." (New Account Form, ECF 32, at p. 67) (emphasis added). The Arbitration Clause provides no expression of intent to arbitrate that could extend to claims

between Plaintiffs and T. Rowe Price.  Absent any such expression of intent to arbitrate, Plaintiffs' reliance on the Arbitration Clause is unfounded.

Plaintiffs also argue that they can invoke the Arbitration Clause as the assignees of Rhea Needle's rights under her contract with T. Rowe Price.  Specifically, Plaintiffs contend that upon Rhea Needle's death, her rights under the New Account Form passed to her named beneficiaries of the IRA—Plaintiffs and their sister—pursuant to the Uniform Transfer on Death Security Registration Act ("UTDSRA"), an Act adopted in Pennsylvania.  20 Pa. Cons. Stat. §§ 6401–13. Plaintiffs are again mistaken.

In its relevant part, the UTDSRA provides:  "On death of a sole owner or the last to die of all multiple owners, ownership of securities registered in beneficiary form passes to the beneficiary or beneficiaries who survive all owners."  20 Pa. Cons. Stat. § 6407.  It is clear from the plain language of the UTDSRA that the statute concerns the transfer of the actual securities from an original owner to a named beneficiary upon the owner's death, not the transfer of rights under the underlying contract.  *See id.* § 6407 ("On death of a sole owner . . . , ownership *of securities* registered in beneficiary form passes to the beneficiary or beneficiaries who survive all owners.") (emphasis added).  As such, under the UTDSRA, upon Rhea Needle's death, Plaintiffs, as two of the named beneficiaries, became the owners of their apportioned *securities* held in the IRA; they did not become owners of, or the "assignees" to, any contractual rights and obligations associated with the IRA.

Because Plaintiffs cannot invoke FINRA Rule 12200 or any written arbitration agreement to compel arbitration of their dispute against T. Rowe Price, their claims are not arbitrable.  Thus, Plaintiffs' claim against T. Rowe Price under the Federal Arbitration Act at Count I is dismissed.

### *Violation of the Securities Exchange Act ("SEA")(Count III)*

With regard to Plaintiffs' SEA claim, T. Rowe Price argues that Plaintiffs lack standing because they are neither the "purchasers" nor "sellers" of securities held in Rhea Needle's IRA account within the meaning of the statute.[8] In response, Plaintiffs argue that they should be considered "sellers" by virtue of the sales of the securities they received through the IRA distributions.

For a plausible claim under Section 10(b) of the SEA, a plaintiff must allege that the defendant used "manipulative or deceptive" practices in contravention of an SEC Rule "in connection with the purchase or sale" of securities. *See* 15 U.S.C. § 78j(b). Under SEC Rule 10b-5, it is unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014) (quoting 17 C.F.R. § 240.10b-5(b)). Only "*purchasers* and *sellers* of securities" may bring claims for securities fraud under Section 10(b) and Rule 10b-5. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731–32 (1975) (citations omitted) (emphasis added). While the SEA does not expressly define the terms "purchaser" or "seller," it does provide that a "purchase" includes "any contract to buy, purchase or otherwise acquire," 15 U.S.C. § 78c(a)(13), and a "sale" includes "any contract to sell or otherwise dispose of," *id.* § 78c(a)(14). Courts may look to dictionary definitions to determine the ordinary meaning of a word with reference to its statutory text. *Bonkowski v Oberg Indus. Inc.*, 787 F.3d 190, 200 (3d Cir 2015). Black's Law Dictionary defines

---

[8]     In his motion to dismiss, Dosik argued that the SEA claim against him was time-barred by the applicable two-year statute of limitations. T. Rowe Price joined Dosik's motion on statute of limitations grounds, noting that Plaintiffs' similar claim against them is premised on the same factual allegations as that against Dosik. [ECF 40]. Because this Court finds that Plaintiffs lack standing to sue T. Rowe Price under the SEA, it need not resolve the statute of limitations issue.

"purchaser" as "[s]omeone who obtains property for money or other valuable consideration" or "a buyer." *Purchaser*, Black's Law Dictionary (11th ed. 2019).  "Seller" is defined generally as "a person who sells anything." *Seller*, Black's Law Dictionary (11th ed. 2019).

Notwithstanding the fact that the securities that Plaintiffs received as the beneficiaries of the IRA were sold for distribution to the beneficiaries, Plaintiffs have not alleged any facts to support the requisite causal connection between the misconduct alleged with respect to the IRA and any alleged loss to Plaintiffs arising from the sale of the securities they received as beneficiaries.  As noted, to assert a claim under Section 10(b) of the SEA, a plaintiff must allege facts to support the alleged unlawful practice "*in connection with* the purchase or sale of [the] security . . . ." 15 U.S.C. § 78j(b) (emphasis added).  Here, Plaintiffs' claims are premised on an alleged fraud with respect to the securities in Rhea Needle's IRA.  Specifically, Plaintiffs allege that T. Rowe Price failed to provide certain account statements to Rhea Needle, which they were allegedly required to do under FINRA Rule 2231, and instead sent them only to Dosik.  Notably, Plaintiffs make no allegations with respect to any unlawful conduct by T. Rowe Price "in connection with" the actual sale or conversion of the securities from *Plaintiffs'* beneficiary accounts.  In the absence of such allegations, Plaintiffs' Section 10(b) claim for violation of SEC Rule 10b-5 fails as a matter of law.  *See Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 332 F.R.D. 556, 577 (M.D. Tenn. 2019) ("Rule 10b-5 prohibits misstatements *in connection with* the purchase or sale of any security.") (emphasis added).

Nonetheless, in support of their argument that they are sellers of securities for SEA purposes, Plaintiffs rely on *McFeeley v. Florig*, 966 F. Supp. 378 (E.D. Pa. 1997).  Plaintiffs' reliance is misplaced.  In *McFeeley*, five sisters, who received securities as a gift from their father, sued their brother for fraud related to the securities.  *Id.*  The *McFeeley* court noted that "[h]olders

11

of securities received as gifts are neither sellers nor purchasers" for Section 10(b) purposes. *Id.* at 382. However, the sisters qualified as "sellers" because they were contractually obligated to sell their shares of the securities to their brother, and once that sale took place, they became "sellers." *Id.*; *accord Blue Chip Stamps*, 421 U.S. 751 ("[T]he holders of puts, calls, options, and other contractual rights or duties to purchase or sell securities have been recognized as 'purchasers' or 'sellers' of securities for purposes of Rule 10b-5 . . . because the definitional provisions of the 1934 Act themselves grant them such a status."). Here, by contrast, there is no indication, in the amended complaint or elsewhere, that Plaintiffs were *contractually obligated* to sell the securities they received upon Rhea Needle's death. To the contrary, Plaintiffs received, as a "gift" by reason of their status as beneficiaries, the proceeds of the IRA. Thus, *McFeeley* does not support their argument that they are "sellers."

Plaintiffs also argue that they have standing, derived from their mother's rights under Section 10(b)—rights they argue were assigned to them under the UTDSRA. This Court found earlier in this Opinion that Plaintiffs could not bind T. Rowe Price to arbitration by virtue of their purported status as assignees of their mother's contractual rights under the New Account Form. For the same reasons, Plaintiffs lack standing to sue T. Rowe Price under the SEA under an assignment theory.

For the reasons offered, this Court finds that Plaintiffs are not "purchasers" or "sellers" under Section 10(b) of the SEA and Rule 10b-5 with respect to the securities held in Rhea Needle's IRA account. Therefore, Plaintiffs lack standing for an SEA claim against T. Rowe Price, and the claim against them at Count III is dismissed.

### *Violation of the UTPCPL (Count V)*

As to the UTPCPL claim, T. Rowe Price argues, *inter alia*, that the claim must be dismissed for lack of standing again because Plaintiffs are not "purchasers" of goods or services from T. Rowe Price. As with Plaintiffs' SEA claim, this Court agrees with T. Rowe Price.

The UTPCPL provides a private right of action to a person who "purchases or leases goods or services" and "suffers any ascertainable loss of money or property," 73 Pa. Cons. Stat. § 201-9.2, as a result of unlawful "unfair or deceptive acts or practices" as defined by the statute, *id.* § 201-3.[9] The UTPCPL does not expressly define "purchaser" or "lessor." However, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has held that "those who may receive a benefit from the purchase" are distinct from "purchasers" and "lessors" and, thus, are not protected under the statute. *Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65 (3d Cir. 1994); *see also Zerpol Corp. v. DMP Corp.*, 561 F. Supp. 404, 415 (E.D. Pa. 1983) ("[A] private cause of action under the [UTPCPL] is available only to purchasers or lessors of goods . . . .") (citing 73 Pa. Cons. Stat. § 201-9.2).

Based on the allegations in the amended complaint, Plaintiffs received the benefit of Rhea Needle's contributions to the IRA. Therefore, Plaintiffs are neither purchasers nor lessors under the Third Circuit's definitions. Clearly, Plaintiff never purchased any goods or services from T. Rowe Price in connection with their mother's IRA. Thus, as named beneficiaries of the IRA, they received a benefit from T. Rowe Price's actions related to the account. *See Gemini Physical Therapy & Rehab.*, 40 F.3d at 65. As such, Plaintiffs do not fall within the class of individuals protected under the UTPCPL. *See Branche v. Wells Fargo Home Mortg., Inc.*, 624 F. App'x 61, 64 (3d Cir. 2015). Notably, in *Branche*, the Third Circuit concluded that the plaintiff, whose late

---

[9] "Unfair or deceptive acts or practices" is defined as one or more actions in a comprehensive list provided at 73 Pa. Cons. Stat. § 201-2(4).

13

husband had obtained a mortgage from a bank, did not have standing to sue the bank under the UTPCPL in her individual capacity, while noting that the husband's estate may have had a claim. *Id.* In their brief in opposition, Plaintiffs attempt to distinguish *Branche* from this case. However, as in *Branche*, Plaintiffs' claims against T. Rowe Price were brought only in their individual capacities, not on behalf of Rhea Needle's estate. Thus, the cases are comparable.

Plaintiffs also argue that they have standing for their UTPCPL claim because (1) they are the intended third-party beneficiaries of the New Account Form and the Power of Attorney and (1) they are the assignees of Rhea Needle's rights under the New Account Form. Plaintiffs are mistaken. As previously noted, this Court found that Plaintiffs cannot invoke the arbitration clause in the New Account Form by virtue of their status as assignees—or third-party beneficiaries—of Rhea Needle's rights upon her death. Likewise, Plaintiffs fare no better in their arguments in support of their UTPCPL claim.

To support their third-party intended beneficiary argument, Plaintiffs rely on *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983). In *Guy*, the Supreme Court of Pennsylvania held that a legatee could sue a testator's lawyer for malpractice in drafting a will, as the legatee was the intended beneficiary of the contract between the testator and the lawyer. *Id.* at 751–52. *Guy*, however, involved common-law malpractice claims, not the UTPCPL. Thus, the case is inapposite here. The UTPCPL does not allow those who merely *benefit* from a transaction to sue under the statute; only "purchasers" or "lessors" may bring such a claim. *Gemini Physical Therapy & Rehab.*, 40 F.3d at 65. Because Plaintiffs are neither purchasers nor lessors under the UTPCPL, they do not have standing for their UTPCPL claim as third-party beneficiaries of the IRA.

Plaintiffs' assignment argument also lacks merit. Notably, their attempt to distinguish this matter from *Gemini* is unavailing. There, contrary to Plaintiffs' contention, the Third Circuit

concluded that UTPCPL claims are *not* assignable, based on the statute's narrow purpose of protecting consumers of goods and services. *See id.* at 66. Regardless, this Court has determined that Plaintiffs were not assigned any of their mother's contractual rights by virtue of their status as IRA beneficiaries. As noted above, the UTDSRA does not provide for the transfer of Rhea Needle's legal rights under the IRA to her named beneficiaries, but rather the transfer of the securities held in the account themselves. *See* 20 Pa. Cons. Stat. § 6407. Therefore, Plaintiffs do not have standing for their UTPCPL claim based on assignment.

Because Plaintiffs are not "purchasers" or "lessors" of goods or services, nor are they third-party beneficiaries or assignees, they do not have standing for their UTPCPL claim against T. Rowe Price. Therefore, Plaintiffs' claim against T. Rowe Price at Count V is dismissed.

**CONCLUSION**

For the foregoing reasons, T. Rowe Price's motion to dismiss is granted. Accordingly, all of Plaintiffs' claims against Defendants T. Rowe Price Group, Inc., T. Rowe Price Associates, Inc., and T. Rowe Price Investment Services, Inc., (Counts I, III, and V) are dismissed. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.